JACQUES COE & CO. and BURNHAM & COMPANY,
*Petitioners*,

*vs.*

MINNEAPOLIS-MOLINE COMPANY, a corporation of the State of Minnesota,

*Defendant.*

*New Castle, July. 21, 1950.*

*Robert C. Barab,* for petitioners and for stockholder-exceptants, petitioners.

*Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, for defendant.

SEITZ, Vice Chancellor: An appraiser acting under *Section* 61 of our *General Corporation Law, Rev.Code* 1935, § 2093, appraised the preferred and common stock of stockholders who chose not to accept the terms of a merger. This is the decision on exceptions to the appraiser's report.

The defendant corporation's preferred stock contract provided for a liquidation price of $110 per share plus accrued dividends. They amounted to $29.60 as of February 21, 1949. The call price was of an equal aggregate amount. The contract had certain provisions for retiring the preferred stock, but the corporation was in substantial default thereon. So long as the dividend arrearages exceeded $6.50 per share, the preferred stockholders had exclusive voting power.

In determining net asset value for the preferred, the appraiser decided that in no event should it exceed $139.60 — the liquidation value plus accrued dividends. The appraiser determined the net asset value of the common stock to be $32.54. This amount was based on the acceptance of an expert witness' net asset evaluation of $26.80 per share less $1.12 per share which represented an amortization item which the appraiser concluded the expert witness had improperly excluded. The appraiser then added $6.86 per share representing good will.

The appraiser decided that net asset value should be weighted at 40% for the preferred stock and 20% for the common. In stating his reasoning in connection with the weighting factor, the appraiser stated that the preferred had been weighted much more heavily than the common because of the substantial advantages which the preferred possessed over the common under the charter provision.

The appraiser decided that a fair market value, uninfluenced by the merger, existed on February 21, 1949 — the

date of merger. I find no error in this conclusion. The market price for the preferred on that date was $113 per share, while the common was $12.13 per share.

The appraiser weighted the market value of the preferred stock at 30% and the common at 45%. In explaining the weight given to the market price the appraiser stated that the common was entitled to more weight than the preferred because of the greater market activity of the common stock. He also pointed out that substantial weight was given the market value of the common because that price represented the considered judgment of numerous investors and speculators — backed up by their own savings. This is, of course, certainly true to a degree.

Finally, the appraiser capitalized the earnings and dividends by taking the average earnings for the preferred and common for a five-year period. Multiplying these yearly earnings by the factor of five, the appraiser arrived at a figure of $149 per share as the earnings-dividends value for the preferred. The appraiser pointed out that arrearages were not included under this element because he had already taken them into account under net asset value. Capitalized for the same period, the per share value of the common stock based on earnings and dividends amounted to $16.90.

The appraiser weighted earnings and dividends at 30% on the preferred and 35% on the common. The appraiser stated that this element was not weighted more heavily as to the common stock because of the failure to pay dividends thereon. The earning prospects of the company did appear to be good.

In order to resolve some of the questions posed by the various exceptions, it is necessary to consider, in a general way, the appraiser's approach to his duties under the statute.

Conceivably, an appraiser in weighting various elements of value and arriving at an appraised value might not articulate his mental processes. However, I believe an appraiser

should state the monetary value which he has ascribed to the more substantial elements of value considered and the weight he has given each such element in arriving at his appraised value. I shall not pause to discuss the many infirmities involved in any evaluation process. The important thing is that the appraiser must, under the statute, arrive at a dollar and cents appraisal. Consequently, the appraiser should state the value of the elements given independent weight and the weight given to each in arriving at the appraised value. This procedure will render the valuation process a little less arbitrary and will permit a review at least on a degree basis.

The present appraiser first determined asset value, market value and value derived from earnings and dividends. He then weighted these elements and arrived at his appraised value. Counsel for the defendant corporation contends that the appraiser committed error in so doing because he contends that the Supreme Court in *Tri-Continental Corp. v. Battye, post p.* 523, 74 *A. 2d* 71, 72, held that where an active market exists, and is uninfluenced by "artificial" factors, such market price is controlling in fixing value under the appraisal statute. I do not so construe the Supreme Court's decision, despite certain features of that opinion, because the Supreme Court there said:

"In determining what figure represents this true or intrinsic value, the appraiser and the courts must take into consideration all factors and elements which reasonably might enter into the fixing of value. Thus, market value, asset value, dividends, earning prospects, the nature of the enterprise and any other facts which were known or which could be ascertained as of the date of merger and which throw any light on future prospects of the merged corporation are not only pertinent to an inquiry as to the value of the dissenting stockholders' interest, but must be considered by the agency fixing the value."

I conclude that the appraiser properly considered elements other than market value in arriving at his evaluation. This consideration took the form of giving independent weight to some of them, and correctly so, in my opinion.

The preferred stockholders contend that the protective features of their stock were so great that they should have been considered by the appraiser as an independent element of value and weighted accordingly. Did the appraiser commit error in failing to treat the protective features of the preferred stock as an element of value to be weighted separately? I think not. It is apparent that, to a degree, many of the so-called "substantial" elements of value may and often do encompass each other. For example, market value may well reflect earnings and dividend prospects. However, in order to effectuate the object of the appraisal statute as construed by our Supreme Court, it is necessary that various factors be considered and, where appropriate, some of them given independent weight. It seems to me that in order to make the appraisal procedure work realistically the court should not disturb the appraiser's determination that a particular factor should not be given independent weight unless that determination is arbitrary or unreasonable in the premises. I say so because, as previously stated, a value factor may well be fairly reflected in an element of value given independent weight — as the appraiser here recognized. It seems to me that the value factor based on the protective features of the preferred stock is fairly reflected in varying degrees in the elements of value actually given independent weight by the appraiser.

The preferred stockholders contend that it was error to limit net asset value to the call or liquidation price when the asset value was more than twice that amount. They concede that the final appraised value should not have exceeded the call or liquidation price, but they urge that such a limitation should not have been placed on net asset value which constituted but one element of the appraised value. Obviously the more assets there are, the more the preferred is protected but this should not increase the amount of net assets attributable to the preferred. The appraiser properly limited net asset value to the call or liquidation price where the net assets were substantially in excess of such prices be-

cause he was seeking value at a particular time. The stockholders' contention, if here adopted, would result in a distortion of the ultimate value of the preferred stock.

The common stockholders urge that the appraiser committed error in excluding from asset value the sum of $785,-000. This sum, according to the common, constitutes the amount of the excessive amortization of emergency facilities. The appraiser found that the amortization in question involved not only a sound accounting practice, but also a proper deduction for an accurate determination of asset value.

The common stockholders contend that the facilities had been completely written off although they were still in use. Since they are still in use, it is contended that it would be fair to include one-half of the book value of these assets in determining their value for net asset value purposes. It would seem that where corporate property has been completely amortized, yet has a value, that value should be included in arriving at net asset value. The difficulty here is that it does not appear that the emergency facilities are still of real value. Nor does it clearly appear that such facilities are still in use. In the absence of evidence that the fully amortized items are of value it cannot be assumed that such is the case. Under the present record the appraiser's conclusion as to these items must be sustained.

Both the stockholders and the corporation have excepted to the weight which the appraiser gave net asset value in computing the appraised value of both the preferred and common stock. I have examined the arguments of counsel and the appraiser's report and I find nothing which would justify the conclusion that the weights assigned by the appraiser to this element were arbitrary or unreasonable. The appraiser committed no error.

The preferred stockholders took two exceptions to the appraiser's calculation of the earnings-dividends element of value. They say the appraiser should have included the

$29.60 per share accrued dividends and should have multiplied the average earnings by a factor larger than five.

The appraiser included accrued dividends in determining net asset value. The preferred stockholders urge that it should also have been included under earnings and dividends because the earnings were adequate to pay such arrearages. I find no error in refusing to consider this item under two elements of value. It is argued that by incorporating it under one item which was weighted 40%, the appraiser has necessarily weighted it only 40%. If other elements of value are weighted, then the same must be true of dividends arrearages. We are not dealing with a dissolution or liquidation.

In calculating the earnings-dividends value the appraiser multiplied average earnings by the factor of five. The preferred think this factor was too small. The factor employed by the appraiser is within the range of reason and will not be disturbed. Substantially the same exceptions as to this element are taken by the common stock and my conclusion as to the preferred also applies to the common.

The defendant corporation filed several exceptions, but its brief appears to be devoted almost exclusively to the proposition that market value should be controlling in the absence of any factors artificially affecting the market. I have already disposed of this point. The other exceptions taken relate largely to a disagreement with the appraiser on matters where a range of discretion necessarily exists. I find no abuse of discretion on the appraiser's part in dealing with the matters attacked in the company's exceptions.

I find the per share value of the preferred to be $131.74 and the common $17.88.

Order on notice.