CHARLES S. JEFFREY *et al. vs.* THE AMERICAN SCREW COMPANY.

JUNE 11, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

ROBERTS, J. This petition in equity was brought in the superior court for the appointment of an appraiser under G. L. 1956, §7-5-12, to establish the full and fair value of the shares of stock of the respondent corporation owned by dissenting stockholders thereof pursuant to the pertinent provisions of §7-5-13. From the appraiser's report fixing the value thereof at $60 per share the petitioners excepted, and after a hearing the superior court entered a decree establishing the full and fair value of each share of the respondent's stock held by the petitioners at $68.75. From that decree the respondent has prosecuted its appeal to this court.

The record discloses that the stockholders of respondent, The American Screw Company, on February 19, 1960 voted to authorize the transfer of substantially all of its property and assets to Noma Lites, Inc. The petitioners in the instant action and the intervenors therein, who together own about 4,990 shares of the common stock of The American Screw Company, did not vote in favor of the proposed transfer and, complying with the pertinent provisions of §7-5-8, objected thereto and made demand for payment of the full and fair value of the shares held by them.

The respondent rejected petitioners' specific demand but, pursuant to §7-5-9, made an offer to pay petitioners for said

shares at the rate of $50 per share. The instant petition was filed on May 13, 1960, and the superior court, acting thereunder, appointed an appraiser, who on January 29, 1963 entered a final report wherein he found the full and fair value of each share held by the dissenting stockholders to be $60.

An appraiser was appointed under §7-5-13, which requires that the court appoint some disinterested person "to appraise the full and fair value of the shares of the dissenting stockholders parties to such proceeding as of the day before the vote was taken without appreciation or depreciation on account of such sale, lease, exchange or other disposition."

Section 7-5-8, in pertinent part, provides that a dissenting stockholder who has filed an objection to the transaction and made demand for payment "shall be entitled to be paid the full and fair value of his shares * * * which full and fair value shall for all purposes of this section and §§7-5-9 to 7-5-16, inclusive, be deemed to be the amount which the owners of such shares would have been entitled to recover at an action at law with respect thereto in case of a conversion thereof."

The extent to which the appraiser made his findings in compliance with the statutory directive is in substantial dispute. The respondent contends that the statute limits the appraiser to a consideration of evidence of market value of the stock purged of any distortion in the market price thereof resulting from an abnormal demand and that in the instant proceeding he erred in failing to apply the test in this manner. On the other hand, petitioners contend that the reference to the amount recoverable in an action for a conversion of the stock is to be read in the light of the dissenter's entitlement to the "full and fair value" of his stock. When so read, they argue, it is clear that the appraiser has a broad discretion to consider and weigh evidence of value

factors in any relevant category to determine what the full and fair value of the stock is.

The pertinent provisions of the statute were intended to provide a simple, expeditious procedure for the determination of the full and fair value of the stock of dissenting stockholders to the end that they might be equitably indemnified. The statute contemplates an adjustment of the statutory power of a majority of the stockholders to determine or alter the course of the corporation's existence with the common-law right of any stockholder to prevent or obstruct such action by a majority by conferring upon the dissenting stockholders the right to be compensated fully and fairly for that which they lose by persistence in their dissent. Being fully aware that the statute considered in *Dickinson* v. *Fire Association of Philadelphia*, 378 Pa. 396, unlike ours, specifically directs payment of the "full market value" and that the court held that the remedy provided therein was not exclusive, it did state expressly that this statute "provides a dissenting shareholder with a more expedient and direct remedy and minimizes the risk and expense that could conceivably accompany an action at law or in equity to prove actual value * * *."

One text writer, discussing the purpose of statutes of this type, said: "To placate the dissenting minority and, at the same time, to facilitate the carrying out of changes of a desirable and extreme sort, appraisal statutes were enacted." Lattin, *Remedies Of Dissenting Stockholders Under Appraisal Statutes*, 45 Harv. L. Rev. 233, 237. The same authority noted that an evaluation of the stock of dissenting stockholders raises questions economic rather than legal and that these statutes contemplate that such questions will be submitted to men versed in the intricacies of corporate finance for determination and thus accomplish the purpose of simplifying and expediting the appraisal procedure.

It is our opinion that the provisions of §7-5-8 linking the measure of damages for conversion in an action at law with

the phrase "full and fair value" were not intended to define restrictively the meaning of that phrase but rather were intended to fix the time as of which such value was to be determined by an exercise of the appraisal procedure. The clear effect of this was to make immaterial and incompetent evidence offered to establish an appreciation or depreciation in the value of stock at a time subsequent to the date of the vote to transfer the assets, which vote the legislature views as constituting a constructive conversion of the dissenters' stock at that time.

It being our opinion that in so doing the legislature was intending to simplify and expedite the determination of the value of such stock, we cannot assume that it intended at the same time to hobble the procedure by promulgating rules as to the competency of evidence on that issue which would serve only to hamper and confuse the class of persons that it appears to have contemplated as being best qualified to make such appraisals. Rather, it is our opinion that the legislature, having acted to confine the determination of the value of stock to a time context and having provided for judicial review thereof, intended that, subject to such limitation in time, the appraiser would have as wide a latitude to consider evidence otherwise competent on that issue as is enjoyed by a court in an action at law for conversion.

An examination of our cases is persuasive that the measure of damages for conversion is usually the value of the property at the time of its conversion, a matter susceptible of being proved by evidence of market value. *National Cash Register Co.* v. *Underwood,* 56 R. I. 379. It is well settled that market price has probative force on such issue and therefore usually is admissible, but the production of evidence as to market price does not preclude the admission of other evidence for the purpose of affecting the weight thereof. *Moss* v. *Rocky Point Park, Inc.,* 81 R. I. 327. Because of the effect of economic forces on the intrinsic value

of corporate stock, its market price may have little probative force on the question of its full and fair value.

The provisions of the instant statute, in our opinion, are significant of a legislative intent to provide a realistic procedure for the appraisal of the value of the dissenters' stock on the basis of a consideration of all relevant value factors including market value, book value, asset value, and other intrinsic factors probative of value. In short, an appraiser, when determining under the terms of our statute the value of a particular stock, has a wide discretion to consider and weigh evidence of any value factor that in the circumstance of the case is relevant and material.

We are completely in accord with the view taken in this matter in *Warren* v. *Baltimore Transit Co.*, 220 Md. 478, where, referring to an appraisal statute, the court said at page 483: "The real objective is to ascertain the actual worth of that which the dissenter loses because of his unwillingness to go along with the controlling stockholders, that is, to indemnify him. The textwriters and cases agree generally that this is to be determined by assuming that the corporation will continue as a going concern—not that it is being liquidated—and on this assumption by appraising all material factors and elements that affect value, giving to each the weight indicated by the circumstances * * *."

The purpose for which the legislature enacted our appraisal procedure can best be given effect by viewing the scope of this discretion in like manner as did the Maryland court, that the appraiser is vested with a sufficiently broad discretion to determine such value by weighing the probative force of value factors which he finds are reasonably relevant and material on the issue. The market price of stock traded actively might well have such probative force as to leave other value factors without weight, but it might well be otherwise where the stock to be appraised is not one which is freely or even regularly traded. After a care-

ful analysis of the arguments advanced by the litigants here, we are not persuaded that the contentions of either are really inconsistent with the view we take in this respect. Each appears to consider the market price to be entirely relevant but that its probative force has been eroded by an alleged distortion of the price or, as argued by petitioners, its failure to reflect fully value factors pertinent to the issue, especially the value of patents owned by respondent.

The report of the appraiser discloses that he made the instant appraisal in conformity with the statute. He directed attention specifically to the entitlement of dissenting stockholders to the full and fair value of their stock and noted that under §7-5-8 this is its value at the time of its conversion. Proceeding on the theory that such value may be proved by evidence of its market value at that time, he found that in the instant case trading in the stock over the counter for a substantial period of time had established a market price for the stock. It is clear also that in reaching this determination he concluded that the market price thus established reflected the existence of other value factors determinative thereof.

The appraiser noted in the report his understanding of respondent's contention "that the market for the stock was abnormal and distorted by reasons of the activities of Textron and Noma Lites, and that there was an abnormal demand for the stock which brought about a rise in the over the counter price, so that the prices paid were not the true market value, and the true market value without this distortion and abnormality was much less." He disclosed also his cognizance of the thrust of petitioners' assertion that "the market price of the stock is to be considered solely as a 'floor'."

We quote from the report because it is, in our opinion, significant that the appraiser, in determining the value of the stock, considered the probative force of evidence adduced to show that the market price was distorted by an

abnormal demand therefor during 1959 and 1960 as well as evidence offered to establish that the market price was too low in that it did not reflect the value of the patents owned by respondent corporation. We find inescapable the conclusion that on such evidence he found that the market price was not distorted by any abnormal demand and did reflect the asset value of the patents.

In support of this conclusion we resort once more to the language of the report. "The evidence establishes a reasonably active market in an over the counter security for a considerable period of time. Noma Lites, Inc., bought the stock it owned in the open market. The Petitioners and Intervenors bought their stock in the open market. * * * The market for any property is affected by many factors, among which are supply and demand. Supply and demand are dependent upon times, circumstances, conditions, and people. The interested public was fully informed and knowledgeable of all of the relevant information concerning American Screw Company and the proposed mergers. There were no secret combinations at work, of which the public had no knowledge, which affected the market price. The market was free and open. It was not artificial and the prices for which the stock sold and was bought was the fair market value."

With specific reference to evidence of trading in the stock prior to February 19, 1960, the appraiser noted that the high bid was $57.75, the high ask was $63.50, and that the high price paid for the actual purchase thereof was $60 per share. On this basis he found that the full and fair value of each share of stock held by dissenters was $60. We are persuaded that the appraiser determined the value of the stock on the basis of its market price and the effect thereon of other value factors. The instant appeal then brought to the superior court the question whether the appraiser erred in determining that the full and fair value of such stock pur-

suant to §7-5-13 was the price prevailing in an over-the-counter market trading therein.

A judicial review of the appraiser's report may be had in the superior court on exception thereto, §7-5-13 providing, in pertinent part, that "Any interested party may except to the appraiser's report, and such exception shall be heard by the superior court, which shall enter such decree as the circumstances may require." The scope of the review is not made clear by this provision, but considering the purposes for which the appraisal procedure was established the report should have conclusiveness in a substantial degree.

It would be consistent with the purposes for which the appraisal procedure was established to conclude that the legislature intended to create an office within the framework of the equity court, separate and apart from the office of master in chancery, for the specific purpose of appraising the value of dissenters' stock. However, we cannot overlook the legislature's use of language directing the appraiser to "proceed to hear said parties and their witnesses with the same powers and according to the same rules as are vested in and bind a master in chancery * * *."

This statutory imposition of the powers and duties of a master in chancery upon the appraiser obscures the legislative intent as to the precise type of review to be exercised by the superior court thereunder. It is sufficient, however, to deter us from holding that the report of the appraiser was to be final and to be reviewed only for errors of law. The statutory vesting of the appraiser with the powers and duties of the master in chancery persuades us that the legislature intended simply to provide for a compulsory reference to a special master in chancery who, for convenience perhaps, is designated as an appraiser. We conclude therefrom that the review provided for in the statute is the review that the superior court, sitting in equity, is empowered to make of the report of a master in chancery.

In *William H. Low Estate Co.* v. *Lederer Realty Co.*, 39 R. I. 422, this court, speaking of such review of a master's report, said at page 430: "There was testimony given before the master which fully warranted his conclusion; and the determination of a master upon questions of fact has a strong presumption in its favor and should not be set aside unless it clearly appears that the master has erred." In short, it is our opinion that under our statute the finding of the appraiser is to be undisturbed if it is not clearly wrong. The superior court scrutinized closely the evidence adduced before the appraiser with respect to its probative force on the value factors. It found ultimately that the appraiser had erred in overlooking material evidence relating to the value of the patents owned by the company and thus failed to conform to the statutory directive to ascertain the full and fair value of the stock. We are unable, however, to agree with the court's conclusion.

It appears from the record that the appraiser was fully cognizant of this evidence and its probative thrust and gave it no weight on the issue of the full and fair value of the dissenters' stock. This was made clear by his discussion of this evidence in the report, concerning which he said: "They then place a separate valuation on the patent rights, because the Company allocates no specific value to them on its books, and add this valuation to the book value and thus arrive at what they term the underlying asset value, as the full and fair value. They isolate one asset of the Company, determine its actual value per share predicated on the income derived therefrom, and then add it to the book value of the stock taken from the balance sheet and come up with what they term underlying asset value, but which I would characterize as a hybrid figure. It isn't book value, and it isn't underlying asset value either, or net asset value if that is what is meant by underlying asset value."

We are persuaded that the appraiser acted pursuant to the statute and considered the evidence to which the court

has referred, assessed its probative force, and assigned it no weight. In such circumstance the superior court in reviewing the report was without authority to disturb the findings made therein by the appraiser unless it appeared clearly that by overlooking material evidence he did not ascertain the full and fair value of the stock.

In *Jacques Coe & Co.* v. *Minneapolis-Moline Co.*, 31 Del. Ch. 368, 373, the court, passing upon a situation quite similar to the one before us now, said: "* * * in order to effectuate the object of the appraisal statute as construed by our Supreme Court, it is necessary that various factors be considered and, where appropriate, some of them given independent weight. It seems to me that in order to make the appraisal procedure work realistically the court should not disturb the appraiser's determination that a particular factor should not be given independent weight unless that determination is arbitrary or unreasonable in the premises." The finding of the appraiser denying weight to the pertinent evidence was neither unreasonable nor arbitrary, and it is our opinion, therefore, that the superior court acted arbitrarily in entering its decree containing a finding as to the full and fair value of the dissenters' stock that was other than the value thereof as stated by the appraiser in his report.

We turn to the respondent's exception to the denial by the appraiser of its motion to require each petitioner and intervenor to produce the stock certificate representing the shares of stock held by him. The purpose of this motion, as we understand it, was to ascertain whether any of the petitioners or intervenors had disposed of their shares of stock in the corporation after the day upon which the vote was taken to transfer the assets thereof to Noma Lites, Inc. Even if we were to view the denial of this motion as being error, we are unable to perceive that the respondent was in any manner prejudiced thereby, and we will not pass upon the merits thereof.

The respondent's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a new decree in conformity with this opinion.

*Edwards & Angell, Knight Edwards, Richard M. Borod, Withington, Cross, Park & McCann, Claude B. Cross, John R. D. McClintock* (Boston), for petitioners and intervenors.

*Winograd, Winograd & Marcus, Max Winograd, Allan M. Shine,* for respondent.