[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court as a result of a judgment made after a trial without the intervention of a jury. The plaintiff, Lawrence Jarvis, had proved by a fair preponderance of the evidence that he was an oppressed minority stockholder in the Conrad Jarvis Corporation, as a result of a petition for dissolution filed by the plaintiff in the Superior Court on June 26, 1990 pursuant to R.I.G.L. 7-1.1-90 Jurisdiction of Court toliquidate assets and business of corporation.
The matter is before the Court for a decision regarding whether or not an appraiser or a master shall be appointed to evaluate the Defendant Corporation's stock to determine its fair value.
As a result of the trial and the finds of fact and law thereon, the trial justice ordered a forced buy out of the minority shareholders interests at "fair value" and had given the parties an opportunity to agree on a master to perform such evaluation pursuant to Rule 53 of the R.C.P.
Since that time the parties have agreed that Lewis M. Finkel, J.D., C.P.A. should be that person to be so appointed by the Court.
Other issues have also evolved which must be addressed at this time in order for an evaluation to be undertaken.
Issues I. Whether or not Mr. Finkel should be appointed as appraiser or a master pursuant to Rule 53 of R.C.P.
 II. Question of what method or methods may be employed by Mr. Finkel in conducting his evaluation.
 III. What shall be the effective date of the Valuation of the Corporate Stock.
 IV. Whether or not Mr. Finkel may or may not consider a minority discount or a lack of marketability or illiquidity discount of the minority shareholders shares.
 V. Whether or not the Corporation has appropriately paid legal fees for the defense of the lawsuit or whether or not the plaintiff is entitled to a credit for attorneys' fee expended.
Issue I
Appointment of Appraiser or Master
The appointment of a master is governed by Rule 53 of the Superior Court Rules of Civil Procedure — in cases in which there is no agreement, the referral of a matter to a master is the exception, rather than the rule. To appoint a master the court must, in nonjury cases, make a showing that some exceptional condition requires it.
In this case the liability aspect has been concluded and findings of fact and law have been made by the Court. The plaintiff has prevailed pursuant to 7-1.1-90 on his petition to involuntarily dissolve the defendant corporation. The Court pursuant to the statute and case law previously cited and in an exercise of its equitable power has determined that dissolution of the defendant corporation is too harsh a remedy and that a mandatory buy out of the plaintiff is the most equitable and appropriate remedy for all parties.
This case has been contentious, the parties are bitter and counsel have tried this case to the zenith of the art of advocacy. The need for a master is not to determine liability but to assist in the resolution of the remedy. The issue of the valuation of corporate stock — which has never been publicly traded is, in the Court's judgment, a very complex exercise which calls for and requires special expertise.
The appointment of an appraiser pursuant to statute is available when a defendant elects appraisal after the filing of a petition for involuntary dissolution. That process is governed by R.I.G.L. 7-1.1-90.1.
In this case the defendant has not requested a buy out of the minority shareholder. The Court has ordered that action after trial and the defendant does not agree with that decision.
The Court feels that these conditions rise to the level of exceptional conditions contemplated by Rule 53. The Court therefore will appoint Mr. Finkel pursuant to Rule 53 as master in this case.
Issue II Method of Evaluation
This issue has been briefed by both sides, essentially the plaintiff wants the master to evaluate the defendant corporation using all relevant factors and may consider but is not required to use, the weighted average of asset value, etc. (Delaware Block so called). While the defendant wants the master to use all relevant factors if he desires to do so, but would require the evaluation to be based on the weighted average of defendants' capitalized earnings, net assets and market value (Delaware Block Method). A review of the case law from Rhode Island and other jurisdictions as submitted by counsel clearly indicates to this Court that to arrive at the fair value of the corporate stock of Conrad Jarvis, the master should be allowed to base his opinion on value using "wide latitude to consider evidence otherwise competent" and to provide "a realistic procedure for appraisal of value of the corporate shares on the basis of a consideration of all relevant value factors including market value, book value, asset value, and other intrinsic factors probative of value". SeeJeffrey v. American Screw Co., 201 A.2d 146 (R.I. 1964) 98 RI 286.
An appraisal to determine the fair value of corporate shares should be based on all relevant factors excluding only speculative elements of value that may arise. The standard "Delaware Block" on weighted average method of valuation shall no longer exclusively control such proceedings. (Paraphrase fromWeinberger v. Vop, Inc., 457 A.2d 701 (Del. 1983).
In other words, an approach to the valuation by the master using his expertise and recognizably appropriate methods of evaluation of the corporate stock of the Defendant Corporation may be employed by the master. Rather than dictating specific forms of valuation, the Court will accept the work product of the master and accept or reject it according to its content and reasoning therefore.
Issue III Effective date of the evaluation:
Having weighed the parties' requests for dates of evaluation and the cited cases pertaining thereto, the Court finds as a fact that the date of the evaluation shall be the date of the filing of the petition for involuntary dissolution of the Corporation.
The Court observes that if the Defendant Corporation had agreed to a buy out per R.I.G.L. 7-1.1-90.1 Avoidance ofdissolution by stock buyout; the date of evaluation would be the day on which the petition was filed. The court feels after weighing the equities of this case, that the appropriate date of stock valuation of the Defendant Corporation should be the close of business of the day on which the petition of involuntary dissolution was filed to wit June 26, 1990. This was during the period in which the plaintiff's cause of action against the Defendant Corporation arose.
Issue IV Should the Master consider and include a Minority Shareholders Discount and/or lack of marketability on illiquidity discount when appraising the Stock of the Defendant Corporation?
The Court looks to the case of Charland v. County View GolfClub, Inc., 558 A.2d 609 (R.I. 1991). This case involved a minority shareholder who filed a petition for dissolution of a corporation. The corporation agreed to buy out the minority shareholder at fair value per R.I.G.L. 7-1.1-90.1.
In that case Judge Kelleher for the Court cited the holding of Brown v. Allied Corrugated Box Co., 91 (Cal App. 3rd) at 486-87 and the 1989 Duke University L.J. at 269, note 63, and agreed that Rhode Island now held in cases where a corporation elects to buy out a shareholder's stock pursuant to 7-1.1-90.1; Rhode Island will not discount the shares solely because of their minority status. Judge Kelleher, after lengthy review, also held that no discount for lack of marketability should be taken under the same circumstances.
In the instant case we do not have a Corporate buy out pursuant to statute. He have a completed trial on the merits for involuntary, dissolution of the Defendant Corporation in which the Plaintiff was victorious.
Both the Brown case supra, and the Duke L.J. supra, indicate that in this situation, the minority shareholder would suffer no discount for lack of marketability or minority share status.
The Court in the Jarvis case felt dissolution was too harsh and an unnecessary remedy given the circumstances of that case. In light of that distinction, should the plaintiff Jarvis not be entitled to fair value without discount as he would certainly be in a dissolution by this Court? The Court feels the answer must be yes.
Applying the same logic of Judge Kelleher and the cited cases to this case, the Court believes no discount for minority shares or lack of marketability can be considered by the master in this case and shall so instruct the master.
Issue V Question of Legal Fees Paid
The trial just concluded concerned itself with Count I of the plaintiff's complaint based on R.I.G.L. 7-1.1-90, involuntary dissolution of the Corporation.
Count II of plaintiff's complaint for breach of fiduciary duty of the shareholders was brought under the common law and is against individual defendants.
After the Counts were severed on June 2, 1991 — all legal fees expended were in defense of the suit brought in Count I against the corporation. This appears to be a proper expenditure of funds for legitimate corporate purposes.
Rhode Island G.L. 7-1.1-4.1 expressly authorizes a corporation to indemnify its directors' legal expenses — Conrad Jarvis' Articles of Incorporation expressly require the Corporation to reimburse attorney fees incurred by the directors.
The Court therefore declines to give any credit on any basis to the plaintiff for moneys expended by the Corporation in defense of this lawsuit.