**MOSEMAN CONSTRUCTION COMPANY**

v.

**STATE of Rhode Island DEPARTMENT OF TRANSPORTATION et al.**

v.

**CLARKE–FITZPATRICK, INC./FRANKI FOUNDATION COMPANY, a Joint Venture.**

No. 91–162–Appeal.

Supreme Court of Rhode Island.

May 5, 1992.

Christopher Little, Tillinghast, Collins & Graham, Providence, for plaintiff.

Robert Corrente, Providence, for Clarke–Fitzpatrick.

Marc DeSisto, Providence, for DOT.

Mark McSally, Cranston, for Port Authority.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the plaintiff's appeal and the third-party defendant's cross-appeal from a judgment in favor of the plaintiff entered by the Superior Court. We affirm.

Moseman Construction Co. (Moseman) commenced this declaratory judgment action in the Superior Court against the State of Rhode Island Department of Transportation (DOT) and the Rhode Island Port Authority and Economic Development Corporation (Port Authority) (collectively, the state). The state in turn brought a third-party claim for indemnification against

Clarke–Fitzpatrick, Inc./Franki Foundation Company, a joint venture (CFF). This action was submitted to the Superior Court on stipulated facts.

After a hearing thereon the Superior Court justice issued his first written decision. The trial justice found that Moseman was the owner of a rail system and piles (rail system) that it had installed on a site CFF leased from the Port Authority and ruled that Moseman could remove its property. The state and CFF brought motions to reconsider whether Moseman should be permitted to remove the property. Following an evidentiary hearing the trial justice issued his second written decision. The trial justice found that removal of the property was no longer feasible and awarded Moseman scrap value of the rail system and piles at the time of conversion by the state. Moseman then brought a motion for reconsideration that the trial justice denied. A judgment in the amount of $62,500 was entered in favor of Moseman for the scrap value of the rail system. An appeal and a cross-appeal were timely filed.

According to the stipulated facts, in June of 1985 DOT and CFF entered into a contract for construction of the new Jamestown bridge. In turn CFF executed a subcontract with Moseman in October of 1985. Pursuant to the terms of this subcontract Moseman was to fabricate precast spans for the bridge superstructure and deliver the spans by barge to the bridge site. Once delivered the spans would be hoisted into place. At the same time CFF entered into a ground lease with the Port Authority for a tract of 7.5 acres on pier 2 at Davisville, Rhode Island, to satisfy its obligation to provide Moseman with a site for fabricating the spans. Pursuant to the terms of the subcontract Moseman was also responsible for making such improvements as would be necessary to perform its operations at the precast yard. One such improvement was the erection of a rail system. These improvements were to be removed from the precast yard by Moseman upon conclusion of the contract. Moseman was responsible for restoring the property to the Port Authority's satisfaction.

By March of 1987 Moseman had constructed a rail system consisting of three longitudinal rails resting on 360 steel piles. Each rail was 628 feet long. The rail system was designed to support the spans during the casting process and facilitate transfer of the completed spans to the transport barges. At this time the transverse portion of the rail system had not been completed.

On March 21, 1988, CFF and DOT agreed to terminate the general contract because of an ongoing dispute; CFF then exercised its right to terminate the Moseman subcontract for convenience.

Following termination of the subcontract Moseman attempted to remove the rail system and piles. However, the state would not permit removal. In December of 1988 the state and Moseman entered into a settlement agreement that set forth the rights of the parties to certain property, except for the rail system that Moseman claimed to own. In regard to the rail system the state and Moseman agreed to submit the question of ownership to the Superior Court for resolution. In January of 1989 Moseman filed a declaratory-judgment action. Initially Moseman prayed for payment of the fair market value of the rail system if the court found Moseman to be the owner.

During the spring of 1989 DOT solicited bids for the completion of the new Jamestown bridge. In the bid solicitation materials, DOT alleged that it had title to the rail system and asserted that the successor contractor would have the right to use the rail system. In response to Moseman's motion the Superior Court enjoined DOT from making the above assertions. Moseman filed a second amended complaint in June of 1989 that prayed for recovery and detention damages or, alternatively, damages for unjust enrichment resulting from the conversion.

The Superior Court justice issued his first written decision on February 16, 1990. He found that the rail system was a trade fixture owned by Moseman in spite of the fact that it was located on property owned by the Port Authority. The trial justice

granted Moseman's prayer for recovery but permitted Moseman to elect to receive the "fair and reasonable value" of the rail system in lieu of recovery.

Both the state and CFF filed motions to reconsider Moseman's entitlement to recovery. On May 30 and 31, 1990, the trial court conducted an evidentiary hearing on these motions. During the hearing DOT's project manager testified that the new contractor had completed the rail system and was presently using it for fabrication and delivery of the spans. He also testified that if DOT were forced to construct a new rail system with piles, the project would be extensively delayed and result in additional costs of approximately $14 million. Moseman presented an expert who testified that in June of 1989 the rail system and piles could have been removed without causing a delay. Moseman's expert also testified that by April of 1990, because casting work was underway on the spans, a delay would result but removal was still possible.

After receiving evidence and hearing the parties' arguments, the trial justice stated from the bench that he intended to issue a written decision granting the motions to reconsider the February 1990 award of recovery. The trial justice did not change his ruling that Moseman owned the rail system and piles.

The trial justice's second written decision was issued on October 11, 1990. He found that removal of the rail system and piles was not now feasible. The trial justice concluded that the appropriate measure of damages was the scrap value of the rail system and piles at the time of conversion by the state. The parties have agreed that "scrap value" means the "gross value of uninstalled materials less the cost of removal."

Moseman's motion to reconsider was heard by the trial justice on December 17, 1990. The trial justice invited the parties to submit offers of proof concerning the amount of damages Moseman suffered if he ruled that the appropriate measure of damages was the value of the installed rail system rather than the scrap value. Moseman contended that its testimony would show that the fair rental value of the rail system was approximately $40,000 per month and the value of the system was approximately $1.2 million. The DOT estimated that the replacement value of the rail system was approximately $900,000 to $1 million. The parties stipulated that the fair and reasonable scrap value of the rail system was $62,500 and agreed that a judgment in that amount could enter with interest accruing from the date of conversion, April 15, 1988.

On January 6, 1991 a judgment was entered in favor of Moseman. A timely appeal by Moseman and cross-appeal by CFF have been filed. Moseman appeals from the portions of the judgment involving (1) Moseman's right to remove the rail system from the precast yard, and (2) the method selected by the trial justice for assessing damages. The cross-appeal filed by CFF focused on one aspect of the removal issue.

I

Both Moseman in its appeal and CFF in its cross-appeal argue that although the trial justice referred to the replevin statute, G.L.1956 (1984 Reenactment) chapter 21 of title 34, in his decision the statute does not apply to this action. We agree. In *Goldberg v. Lancellotti*, 503 A.2d 1129, 1130 (R.I.1986), we stated that "[r]eplevin is merely a provisional remedy that applies prior to a trial on the merits." Stated differently, the replevin statute applies only when the plaintiff seeks pretrial seizure of personal property pending a trial to determine ownership. When, as here, the plaintiff brings a civil action, seeking a determination of who owns the personal property at issue and prays for an equitable remedy, the trial justice after a trial on the merits may exercise the equitable powers conferred upon him or her by G.L. 1956 (1985 Reenactment) § 8–2–13[1] to

---

1. General Laws 1956 (1985 Reenactment) § 8–2–13 provides:

"Exclusive jurisdiction of equity actions.—The superior court shall, except as otherwise provided by law, have exclusive original jurisdic-

grant relief such as recovery of personal property. Therefore, Moseman did not need to file a writ pursuant to the replevin statute to be entitled to a return of its property after a trial on the merits. Moseman need only pray for this equitable remedy in its complaint.

## II

■ The next issue before us is whether the trial justice was clearly wrong when he concluded after conducting an evidentiary hearing on motions for reconsideration filed by the state and CFF that it is not now feasible to allow Moseman to remove the rail system.

According to Moseman, equitable relief should not be provided to a party who is responsible for his or her own injury. Expert testimony presented by Moseman is alleged to have shown that the rail system could have been removed without delay or consequential expense to the state prior to June 1989 when a bid was accepted for the successor contractor. Moseman contends that the circumstances that made removal impracticable were created by the state's decision to let the successor contractor utilize the rail system even though it knew Moseman wanted its return. Therefore, asserts Moseman, the trial justice erred when he concluded that the equities weighed in favor of the state.

We have long held that the "decision of a trial justice sitting in equity is entitled to great weight and should not be disturbed unless it is clearly wrong." *Klowan v. Howard,* 83 R.I. 155, 159, 113 A.2d 872, 874 (1955). We take exception to Moseman's view that its expert's testimony was undisputed on the question of whether removal of the rail system prior to June of 1989 would have caused a delay or consequential damages to the state. Moseman's own expert on cross-examination could not defi-

nitely state that removal of the rail system would not damage the spans cast prior to termination of the subcontract. The project manager, Peter Janaros, testified that the rail system could not be removed without damaging the spans resting thereon. Further, he estimated that it would take approximately four months to remove the rail system, would require removal of the roof to the curing shed that the state had just bought from Moseman for $398,-000, would require relocation of the 2,400–ton spans while the supporting rails were removed, would take six to eight months to reinstall a rail system, and would cost the state approximately $14 million. In the spring of 1989 Moseman did not seek injunctive relief to stop the state from using the rail system, in spite of the fact that Moseman knew the state contemplated its use. Moseman's argument that the equities weighed in its favor defies logic. What Moseman would have realized, had it gotten the rail system back, was rails and piles with a value that Moseman admits is $62,500 at a cost to the state of approximately $14 million. We do not find that the trial justice was clearly wrong when he concluded that removal of the rail system was no longer feasible.

## III

■ The final issue is whether the trial justice erred when, after determining that removal of the rail system was no longer feasible, he awarded Moseman the scrap value of the rail system as damages.

Moseman asserts that the proper measure of damages is the actual value when, as here, a defendant converts personal property that has no commercial market. Because of the nature of the personal property converted, Moseman asserts that actual value should be determined by the replacement cost. Moseman argues that the

---

tion of suits and proceedings of an equitable character and of statutory proceedings following the course of equity. If an action is brought in the superior court which represents an attempt in good faith to invoke the jurisdiction conferred by this section, the superior court shall have jurisdiction of all other actions arising out of the same transaction or occurrence, provided such other actions are joined with the action so brought or are subsequently made a part thereof under applicable procedural rules, and the court may retain jurisdiction over such other actions even though the initial action fails for want of equity jurisdiction."

state enjoys a windfall as a result of the trial court's award because the state has converted a rail system with an actual value of $1.2 million yet only been directed to pay $62,500 in damages.

It is well settled in Rhode Island that "the measure of damages for conversion is usually the value of the property at the time of its conversion, a matter susceptible of being proved by evidence of market value." *Jeffrey v. American Screw Co.*, 98 R.I. 286, 291, 201 A.2d 146, 150 (1964). According to Moseman's own brief, the parties have agreed that at the time of conversion the value of the component parts, after removal from the precast yard, was $62,500. The component parts are the steel rails and the steel piles. All that Moseman would have realized had it gotten its property back when it asked for it was the steel rails and steel piles worth $62,500, which is just what Moseman received under the trial justice's judgment. We find no error in the trial justice's determination of damages.

For all these reasons Moseman's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.