DECISION
After a hearing regarding the adoption of a Special Master's Report pursuant to Super.R.Civ.P. 53 (e)(2) in the above-entitled matter, decision is herein rendered.
I
This case arises from a shareholder dispute between plaintiff, Thomas R. DiLuglio (DiLuglio), and defendant, John H. Petrarca (Petrarca). Providence Auto Body ("PAB") is a duly organized corporation existing under the laws of Rhode Island. Mr. Petrarca is the majority shareholder, sole director, and founder of the business. Mr. DiLuglio is the sole minority shareholder in PAB. In 1994, DiLuglio petitioned this Court for a dissolution and accounting of the corporation, claiming that Defendant had committed various breaches of his fiduciary duties to the corporation and to DiLuglio. Rather than dissolve the company, this Court ordered Petrarca to purchase DiLuglio's shares in PAB for their "fair value," pursuant to R.I.G.L. 1956 § 7-1.1-90.1.
Pursuant to Super.R.Civ.P. 53, this Court appointed a Special Master to determine the fair value of DiLuglio's minority interest in PAB as of February 7, 1989. The Master's Report concludes that the fair value of PAB as a whole on that date is $874,000, consequently fixing the value of DiLuglio's 20% interest at $174,800. Each of the parties was allowed the opportunity to conduct their own valuation study as well. This Court held a hearing in September of 1996, pursuant to R.C.P. 53 (e)(2), to consider the defendants' objections to the adoption of the Master's Report.
II
Section 7-1.1-90.1 provides a procedure for a stock buyout as an alternative to dissolving a corporation and distributing its assets. When the parties cannot agree on the value of the shares involved, this Court must determine their "fair value" before ordering one party to purchase the shares. R.I.G.L. § 7-1.1-90.1. Superior Court Rule of Civil Procedure 53 allows for the appointment of "a special master in any appropriate action which is pending therein." Super.R.Civ.P. 53 (a). According to Super.R.Civ.P. 53 (e)(2), this Court should accept the findings of the master "unless clearly erroneous." Furthermore, the Rhode Island Supreme Court has held that in a valuation proceeding referred to an appraiser, "the finding of the appraiser is to be undisturbed if it is not clearly wrong." Jeffrey v. AmericanScrew Co., 98 R.I. 286, 296, 201 A.2d 146, 152 (1964) (quotingWilliam H. Low Estate Co. v. Lederer Realty Co., 39 R.I. 422,98 A. 180 (1916)).
The defendants, Providence Auto Body and Petrarca (defendants), raise three objections to the Master's Report: 1) the Master did not properly apply the holding of Charland v.Country View Golf Club, 588 A.2d 609 (R.I. 1991); 2) the Master did not use the appropriate capitalization rate in completing the valuation of the business at issue, and 3) the Master should not have made certain adjustments to the value of PAB. The Court will discuss each in seriatim.
The defendants first argue that because PAB is a closely held business and has no readily available market for the sale of its shares, the Master should have applied a $150,000 discount to the overall value of the shares. In Charland v. Country View GolfClub, Inc., 588 A.2d 609 (R.I. 1991), the Rhode Island Supreme Court held that neither a minority discount nor a discount for lack of marketability should be applied in proceedings under § 7-1.1-90.1. The defendants assert that a marketability discount may still be appropriate under Charland, if it is applied to the complete value of the shares as a whole rather than to a minority. This argument is without merit.
The holding of the Charland decision is clear. "We therefore today adopt the rule of not applying a discount for lack of marketability in § 7-1.1-90.1 proceedings." Charland, 588 A.2d at 613. This plain statement prohibits the application of a lack of marketability discount in any § 7-1.1-90.1 proceeding. There is no suggestion that the rule is limited to the valuation of a minority block of shares rather than to the aggregate value of all shares. As long as the valuation is completed in the course of a buyout pursuant to § 7-1.1-90.1, the discount does not apply.
The defendants impliedly admit that Charland prohibits the application of a marketability discount to a minority block of shares. The defendants' construction of the Charland case, however, would in fact nullify any meaningful application of that rule. Given that the discount is applied as a percentage, there is no practical difference between applying the marketability discount to a minority block of shares versus the total value of all the shares. The same ultimate value would be obtained either way. If this approach to valuation became common, it would defeat any meaningful application of the rule from Charland.
The defendants' first objection must fail for other reasons as well. First, allowing the marketability discount would be inconsistent with the underlying reasoning of the Charland
decision. The court in Charland noted that in § 7-1.1-90.1 proceedings, the stock is not being sold on the open market, it is being purchased by the corporation and its sale is therefore assured. "[N]o lack of marketability discount should be applied because the shares are not being sold on the open market; they are purchased by the corporation." Charland, 588 A.2d at 612. The Master specifically noted this principle in his decision not to allow the discount proposed by Defendants' experts. Master's Report at 22.
Second, the strongest authority for allowing this type of discount was rejected by Charland. In Blake v. Blake Agency,Inc., 486 N.Y.S.2d 341 (App. Div. 1985), a New York court held that a marketability discount for a close corporation is appropriate in similar proceedings. "A discount for lack of marketability is properly factored into the equation because the shares of a closely held corporation cannot be readily sold on a public market." Blake, 486 N.Y.S.2d at 349. The Rhode Island Supreme Court specifically rejected Blake and its reasoning, however, relying on the fact that the shares were certain to be sold. Charland, 588 A.2d at 612. The court also noted that the Rhode Island and New York statutes are significantly different.See Id. In a valuation proceeding in Rhode Island, "[t]he real objective is to ascertain the actual worth of that which the dissenter loses . . . that is, to indemnify him." Jeffrey v.American Screw Co., 98 R.I. 286, 201 A.2d 146 (1964).
Finally, this Court specifically directed the Master not to consider a marketability discount, which is noted in the Master's Report at 4-5. This order is consistent with the statutes providing for valuation and appraisal. The instant case is proceeding under R.I.G.L. § 7-1.1-90.1, which allows the court to appoint a master and determine the value of the shares "in accordance with the procedure set forth in § 7-1.1-74 . . . ." That section, allowing dissenting shareholders to be paid the "fair value" of their shares, provides "[t]he appraisers shall have such power and authority as shall be specified in the order of their appointment or an amendment thereof." Furthermore, the order prohibiting a marketability discount is, for the reasons above, consistent with the controlling case law, Charland v.Country View Golf Club. The Master was specifically and properly directed not to consider a marketability discount, and the Master's recommendation on this matter should be adopted by the Court.
The defendants next argue that the Master should have applied the capitalization rate used in the valuation report completed by their experts ("the Kahn Report"). The defendants' experts arrived at a capitalization rate of 30% by combining a risk-free investment rate with a risk premium. This is the same "build-up" method employed by the Master, who arrived at a rate of 20.6%. Master's Report at 23. The defendants' higher rate actually results in a lower overall value due to the application of an inverse multiplier in the final determination. The defendants' capitalization rate is higher because the Kahn report specifically includes an additional risk premium based on the contributions of Mr. Petrarca to PAB. The defendants contend that the inherent risk of a business heavily reliant on one individual must be specifically considered. This argument is also without merit.
This Court should generally defer to a determination of value made by a Special Master, unless it is "clearly wrong." Jeffrey, 98 R.I. at 296, 201 A.2d at 152. See also William H. Low EstateCo. v. Lederer Realty Co., 39 R.I. 422, 98 A. 180 (1916). Superior Court Rule of Civil Procedure 53 (e)(2) requires that the court accept a master's findings of fact "unless clearly erroneous." Furthermore, the Master should be allowed "a wide discretion to consider and weigh evidence of any value factor that in the circumstance of the case is relevant and material."Jeffrey, 98 R.I. at 290, 201 A.2d at 149. This discretion includes the right to disregard factors proposed by the parties' experts that the Master believes inapplicable, unless otherwise required by law.
In the present case, both the Master's Report and the Kahn Report use the same methodology, which the defendants do not challenge. The Kahn Report, however, calculated the higher risk premium based on the assumption of an outside third-party buyer. The Master noted the higher risk premium employed in the Kahn Report and specifically rejected it, finding that it "is not appropriate in this type of proceeding." Master's Report at 23. As the Master noted, "The difference between the Master's capitalization rate of 20.6% and Kahn's rate of 30% is the risk that the revenue generated by the business [Petrarca] would not be repeated by a potential buyer." Master's Report at 23. The Master held that this is not a relevant factor because there is no "potential buyer." The shares will be purchased by the majority shareholder who will retain control of PAB, thereby eliminating the risk that an outside buyer would otherwise consider.
The Master's determination not to include a higher risk premium based on the contributions of Mr. Petrarca is not clearly erroneous. The Master noted the fact that the business will not be sold to a third party. Relying on this fact, the Master rejected the notion that the valuation must consider the risk that would exist for a third party "potential buyer." As stated above, the court in Charland approved of this approach, noting that in these cases the stock will not be sold on the open market. Charland, 588 A.2d at 611-12.
Finally, defendants contend the Master erroneously held that the overall value of PAB should be adjusted to reflect Petrarca's high salary and personal use of company cars. The Master's ruling effectively assigns to the business a higher value than it would have had without these additional benefits. The defendants assert that this was inappropriate. This assertion must fail for two alternative reasons.
This Court ordered the parties, in a decision dated September 6, 1996, to submit objections in writing on or before September 9, 1996, which defendants did, including the present objection. The defendants had previously changed their position on this particular issue, however, effectively waiving their right to raise it now. The defendants' original submission to the Master included their contention that the value of PAB should not be adjusted for the salary and automobile benefits. When defendants later submitted their comments to the Master's first draft, however, they had abandoned this position. As the Master noted, "Apparently, Defendant now agrees with the Master that adjustments are required for excess salaries and the personal use of automobiles, because in his revised calculations found in his Comments, Defendant's expert has used the Master's weighted average earnings which contain these adjustments." Master's Report at 21. The defendants have previously admitted that they had already filed all of their objections. In a letter addressed to the Court dated July 1, 1996, paragraph 2, counsel for defendants states that in accordance with the Master's directions, all objections have been filed.
Despite the apparent waiver of this particular issue, the Court will address the defendants' objection. Superior Court Rule of Civil Procedure 53 (e)(2) provides that "the court shall accept the master's findings of fact unless clearly erroneous." The Master made several specific fact findings regarding salaries and personal use of automobiles, and the resulting effects on the value of PAB. The Master ruled that the value of PAB should be adjusted upward for the personal use of company automobiles. In doing so, he specifically rejected the plaintiffs higher valuation, and settled on a value of five thousand dollars. The Master based this number on the factual finding that "most of the cars are older vehicles with a low fair market value." Master's Report at 9. The Master also considered the costs of "personal" gas and insurance. Id. at 10. The Master also ruled that the value of PAB should be adjusted upward to reflect the justifiably high salary of Mr. Petrarca. To support this ruling, the Master performed "extensive research" and completed a survey of the salaries at other similar businesses. The Master included his findings of fact on comparable salaries in his report, and determined that Mr. Petrarca's salary was reasonable, thereby approving the upward adjustment in the value of the business. Master's Report at 9. The Master's Report clearly states the reasons for making the adjustments, and this Court does not find that they are clearly erroneous.
After considering all the arguments of counsel presented at the hearing regarding the adoption of the Special Master's Report, and after reconsidering the Special Master's Report and Recommendation and the reviewing opinions submitted therewith, this Court finds said report to be credible, reasonable, and not clearly erroneous. Accordingly, this Court adopts said report in full and finds the fair market value of 100% of the common stock of Providence Auto Body as of February 7, 1989 to be $874,000. and Mr. DiLuglio's 20% interest to be valued at $174,800.
Counsel shall submit the appropriate judgment for entry.