DECISION
Before the Court are questions pertaining to the valuation of stock held by defendants and counterclaim plaintiffs Antonio L. Teixeira and Armenio Teixeira (the Teixeiras), the calculation of interest on said shares of stock, the entitlement of Armenio Teixeira to the full value of his shares after redemption in 1990, and finally, the entitlement of the Teixeiras to the repayment of principal and interest on alleged outstanding loans. A. Teixeira Company, Inc. (the corporation), requests offsets to the fair market value of the minority stock based upon dividends paid. Jurisdiction is pursuant to G.L. § 7-1.1-74 and § 7-1.1-901.
 Travel/Facts
After a jury verdict and counterclaim action heard by this Court and our Supreme Court, thereafter, the Teixeira dispute once again resurfaces. By way of background, the corporation was incorporated in 1981 as a friendly business venture owned by six shareholders: among them, Armenio and Antonio Teixeira, Honorato Custodio, Joaqium Duarte, Manuel Moitoso, and Artur Moto.[1] The defendants in the instant claim, Armenio and Antonio Teixeira, are minority shareholders of plaintiff corporation, which operates retail liquor stores in Cumberland, Rhode Island. In 1982, Armenio Teixeira purchased an interest in a second liquor store, and the corporation sued the Teixeiras claiming that this purchase was made in usurpation of corporate opportunity. Thereafter, a jury found the Teixeiras liable for misappropriation of a corporate opportunity and awarded punitive damages together with the transfer of the corporate stock in the second liquor store to the corporation. This verdict, however, was subsequently reversed.
In reversing this jury verdict, the Rhode Island Supreme Court stated that the corporation failed to successfully prove the two required elements for misappropriation of a corporate opportunity: that the Teixeiras were corporate fiduciaries and that they diverted a corporate opportunity. A. Teixeira Co., Inc. v. Antonio L. Teixeira, et. al.,699 A.2d 1383, 1386 (R.I. 1997). Although the Court concluded that the Teixeiras "assumed a fiduciary duty toward one another and their corporation," they "did not breach that duty because plaintiff corporation was financially unable to avail itself of the opportunity of purchasing [the second liquor store]." Id. at 1388.[2]
 The Counterclaim
In their counterclaim action before this Court in 1994, the Teixerias, as minority shareholders, sought relief against the majority shareholders for allegedly engaging in oppressive conduct, thereby breaching the duty of good faith owed to the minority. The Teixeiras requested that this Court liquidate the assets of the corporation, or in the alternative, order the buyout of the Teixeiras' minority stock. In its 1994 decision, this Court did not find minority oppression that would warrant the drastic remedy of corporate dissolution. However, the Court did order the corporation, or its majority stockholders, to purchase the Teixeiras' stock at a price equal to its fair value in accordance with the values of those shares at the time the original action was filed and pursuant to G.L. 1956 § 7-1.1-901.
On appeal, our Supreme Court sustained this Court's order that the majority shareholders purchase the stock of the Teixeiras. A. Teixeira 
Co., Inc. v. Teixeira, 674 A.2d 407 (R.I. 1996).
However, the Court determined that the fair market value should be set "as of the date that the [Teixeiras] amended their complaint to request the purchase of the stock by the majority stockholders . . . May 23, 1990." Id. Furthermore, the Court ordered that the cost of assessing the fair market value of the stock would be shared among the parties. Id. Finally, the Court ordered that interest would be awarded to the Teixeiras on the amount of the fair market value of the stock from May 23, 1990.
After engaging in failed attempts to reach an acceptable financial arrangement, the Teixeiras request that this Court determine the valuation of their shares, the interest to be added thereto, Armenio Teixeira's appropriate status as a shareholder of the corporation who was bought out by the corporation in 1990, and loan repayments from the corporation that the Teixeiras assert are due to them.
 Standard of Review
This Court previously ordered, pursuant to G.L. § 7-1.1-901, the stock buyout of the minority shareholders by the majority to avoid corporate dissolution, and was subsequently affirmed on appeal.
Section 7-1.1-901 provides, in part:
 "If the parties are unable to reach an agreement as to the fair value of the shares, the court shall, upon the giving of a bond or other security sufficient to assure to the petitioner payment of the value of the shares, stay the proceeding and determine the value of the shares, in accordance with the procedure set forth in § 7-1.1-74, as of the close of business on the day on which the petition for dissolution was filed. Upon determining the fair value of the stock, the court shall state in its order directing that the stock be purchased, the purchase price and the time within which the payment is to be made, and may decree any other terms and conditions of sale that it determines to be appropriate, including payment of the purchase price in installments extending over a period of time, and, if the shares are to be purchased by shareholders, the allocation of shares among shareholders electing to purchase them, which, so far as practicable, are to be proportional to the number of shares previously owned. The petitioner is entitled to interest, at the rate on judgments in civil actions, on the purchase price of the shares from the date of the filing of the election to purchase the shares, and all other rights of the petitioner as owner of the shares terminate on that date. The costs of the proceeding, which include reasonable compensation and expenses of appraisers but not fees and expenses of counsel or of experts retained by a party, shall be allocated between or among the parties as the court determines. Upon full payment of the purchase price, under the terms and conditions specified by the court, or at any other time that is ordered by the court, the petitioner shall transfer the shares to the purchaser."
In determining the fair value of corporate stock, G.L. § 7-1.1-74 (e) (f) (g) provides, in part:
 "(e) The court may, if it so elects, appoint one or more persons as appraisers to receive evidence and recommend a decision on the question of fair value. The appraisers have the power and authority that is specified in the order of their appointment or an amendment of the order. The judgment is payable only upon and concurrently with the surrender to the corporation of the certificate or certificates representing the shares. Upon payment of the judgment, the dissenting shareholder ceases to have any interest in the shares."
 (f) The judgment shall include an allowance for interest at the rate of interest on judgments in civil actions from the date on which the vote was taken on the proposed corporate action to the date of payment.
 (g) The costs and expenses of any proceeding shall be determined by the court and assessed against the corporation, but all or any part of the costs and expenses may be apportioned and assessed as the court deems equitable against any or all of the dissenting shareholders who are parties to the proceeding to whom the corporation has made an offer to pay for the shares if the court finds that the action of the shareholders in failing to accept the offer was arbitrary or vexatious or not in good faith. The expenses include reasonable compensation for and reasonable expenses of the appraisers, but exclude the fees and expenses of counsel for and experts employed by any party; but if the fair value of the shares as determined materially exceeds the amount which the corporation offered to pay for the shares, or if no offer was made, the court in its discretion may award to any shareholder who is a party to the proceeding a sum that the court determines to be reasonable compensation to any expert or experts employed by the shareholder in the proceeding."
 The Minority Discount
The Teixeiras maintain that a minority discount should not be applied to the valuation of their stock. In asserting said contention, the Teixeiras rely upon the holding set forth in Charland v. County View Golf Club, Inc., 588 A.2d 609 (R.I. 1991), wherein our Supreme Court refused to apply either a minority discount or a lack of marketability discount to minority shares in determining the fair value of minority shares. Id. at 613. The Charland Court "adopt[ed] the rule that in circumstances in which a corporation elects to buy out a shareholder's stock pursuant to [G.L.] § 7-1.1-901, [the Court] shall not discount the shares solely because of their minority status." Id. at 612 Alternatively, the corporation argues that a minority discount is appropriate and that the rule in Charland does not apply to the instant scenario. In support of this contention, the corporation asserts that there are two lines of authority with respect to minority shareholder discounts: the Charland rule and the holding promulgated in Jeffrey v. American Screw Co.,98 R.I. 286, 201 A.2d 146 (1964). Our Supreme Court in American Screw determined that when the shareholder elects to be bought out, the appraiser "has a wide discretion to consider and weigh evidence of any value factor that in the circumstance of the case is relevant and material." Id. at 150. Subsequently, the corporation maintains that the distinction between these authorities turns on who initially requested the buyout in the first place.
The corporation claims that in this case, where it is the minority shareholders who elect to sell and "a corporation is forced to buy shares it does not want after having done nothing wrong, as here, it is the shareholders who gain an unfair profit unless a minority discount is applied." (See Sur-Reply Memorandum, p. 2).
Our Supreme Court has most recently followed the rationale enunciated by Charland with respect to the inapplicability of minority discounts in G.L. § 7-1.1-90 scenarios. Analogous to the instant matter, the minority shareholder in DiLuglio v. Providence Auto Body, Inc.,755 A.2d 757 (R.I. 2000), sought dissolution of the corporation under G.L. § 7-1.1-90. In DiLuglio, the trial justice also ordered the majority shareholder to purchase the minority shares as an alternative to the drastic option of dissolution. The Supreme Court affirmed the decision of the trial justice in her refusal to allow for any reduction or discount since "the sale of this block of minority stock was assured because a known and qualified buyer [the majority shareholder] existed to purchase [the minority] shares." Id. at 774. A majority of other jurisdictions have followed this practice in refusing to apply a minority discount when the Court orders a minority buyout to avoid dissolution. See e.g., Hansen v. 75 Ranch Co., 957 P.2d 32 (Mont. 1998) (application of minority discount is inappropriate when minority shareholders in close corporation sell their shares to corporation); Foy v. Klapmeir,992 F.2d 774 (Minn. 1993) (minority discount should not be applied in valuing stock held by dissenting shareholder); Columbia Management Co. v. Wyss, 765 P.2d 207, 94 Or. App. 195 (1988) (a minority discount was improperly applied in the context of valuing a dissenting minority shareholder's stock); ("within the context of a dissolution proceeding, almost all of the courts that have considered the question have rejected the application of a minority discount, the courts reasoning, in part, that if the corporation had been dissolved, the minority shareholder would have received the pro-rata value of the shares, with no consideration given to whether the shares represented a controlling interest." 13 ALR 5th 840, 850 (1993)). Accordingly, this Court will not apply a minority discount to the value of the Teixeiras' shares.
 Rate of Interest
The DiLuglio Court also calculated interest on the purchase price of the minority shares. The Supreme Court determined that the trial justice erred in her decision to award compound interest based upon G.L. § 7-1.1-74 (f), which then provided that "[t]he judgment shall include an allowance for interest at the rate of interest the court may find to be fair and equitable in all the circumstances." Id. at 775. Instead, the Court adopted the principle promulgated by the First Circuit Court of Appeals' decision in Bogosian v. Woloohojian, 158 F.3d 1 (1st Cir. 1998), which disallowed an award of compound interest in G.L. § 7-1.1-901 election to purchase proceedings. Id. at 775 (citing Bogosian, 158 F.3d at 8). The Bogosian Court stated that "no Rhode Island court had allowed compound prejudgment interest under any statute that did not specifically authorize it." DiLuglio, at 775 (quoting Bogosian at 8-9). Our Supreme Court "disfavor[s] compounding the interest on monetary awards in a judgment when the Legislature has not specifically authorized it." Id. at 775.
The legislature did in fact address this deficiency with respect to both the rate and methodology to be employed in calculating the interest on the purchase price of the shares. On July 8, 1999, the legislature enacted P.L. 1999, ch. 474, § 1, amending G.L. §§ 7-1.1-74 and 7-1.1-901 to include the following provisions, respectively:
 "(f) The judgment shall include an allowance for interest at . . . the rate of interest on judgments in civil actions, from the date on which the vote was taken on the proposed corporate action to the date of payment.
 The petitioner is entitled to interest, at the rate on judgments in civil actions, on the purchase price of the shares from the date of the filing of the election to purchase the shares, and all other rights of the petitioner as owner of the shares terminate on that date."
Accordingly, this Court orders the application of the statutory interest rate of twelve percent[3] per annum, from the date set forth by our Supreme Court in A. Teixeira Co., Inc. v. Teixeira, 674 A.2d 407 (R.I. 1996), May 23, 1990, which is the date Teixeiras amended their complaint to request the purchase of the stock by the majority stockholders.
 Armenio Teixeira's Status
During the pendency of this extended litigation, Armenio Teixeira was convicted of criminal conduct (unrelated to the corporation), which resulted in his removal as a shareholder on November 16, 1990. The corporation removed Armenio pursuant to Article V, Paragraph 4 of its bylaws, which provide:
 "Upon the vote of more than Fifty (50%) percent of the then outstanding shares of the corporation, any shareholder who has been convicted of a crime, whether in Rhode Island or any other jurisdiction, shall be compelled to transfer to the corporation, all the shares of the corporation then registered in his name, and upon such transfer shall receive in return his initial capital investment in the corporation, without interest." (emphasis added).
The Teixeiras assert that because Armenio was still a shareholder on the date that the Supreme Court ordered the shares to be valued, May 23, 1990, he therefore should be entitled to receive the full value of his shares with interest to the present. The Teixerias maintain that this Court should "view the relationship between the shareholders as if it was frozen as of May 23, 1990, voiding the redemption of Armenio's shares on November 16, 1990." Thus, the Teixerias contend that Armenio "should be deemed to have been a shareholder until the Court ordered corporate buyout is completed" and should therefore collect his share of the dividends paid by the corporation to its shareholders in 1998 and 1999. Furthermore, the Teixerias argue that the decision entered by this Court on December 14, 1994, explicitly includes Armenio in the stock buyout:
 "[A]n order will be entered requiring A. Teixeira 
Co., Inc., or the majority of its stockholders, specifically Honorato Custodio, Joaquim Duarte and Manuel Moitoso, to purchase the stock of the minority stockholders; namely, the counterclaim plaintiffs Armenio and Antonio Teixeira, at a price equal to their face value."
The Teixerias also advert that this inclusion of Armenio in the judgment was never challenged by way of either a Rule 60 (a) Motion or on appeal to the Supreme Court.
Alternatively, the corporation maintains that Armenio cannot recover anything beyond his capital contribution of $17, 000.00 because of the 1990 redemption of his shares. In addition, the corporation asserts that Armenio was merely a nominal plaintiff who was a necessary party to the proceedings. It suggests that "[i]f Armenio wanted to recover additional monies it was his obligation to successfully plead his case to the Supreme Court." Finally, the corporation proposes that this Court may make the appropriate corrective actions pursuant to Rule 60 (a) of Super.R. Civ. P.
In Rhode Island, corporate bylaws "may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation." G.L. § 7-1.1-25. In addition, corporate bylaws in closely held corporations effectuate the intent of the parties and are largely considered inter se contracts between the shareholders.[4] Thus, this Court shall employ contract interpretation analysis in determining whether Armenio's removal as a shareholder was, in fact, a nullity as suggested by the Teixeiras.
In interpreting whether a contract is clear and unambiguous, the Court shall view the document in its entirety and its language must be given its plain, ordinary and usual meaning. W.P. Associates, v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994) (citing Antone v. Vickers,610 A.2d 120, 123 (R.I. 1992)). Courts may deem a contract ambiguous "only when it is reasonably and clearly susceptible to more than one interpretation." Id. at 356 (citing Gustafson v. Max Fish Plumbing 
Heating Co., 622 A.2d 450, 452 (R.I. 1993)); Nelson v. Ptaszek,505 A.2d 1141, 1143 (R.I. 1986)). This Court finds the intention of the parties can be fairly carried out to provide a proper financial return to Armenio, commensurate with his investment in the corporation. Id. at 356.
This Court is satisfied that Armenio Teixeira was effectively removed as a shareholder in November of 1990, pursuant to the legally enforceable corporate provision terminating his shareholder status upon the occurrence of a criminal conviction. To regard him as a shareholder until the corporate buyout is completed would be a legal fiction. Accordingly, the decision rendered by this Court on July 21, 1994, and upheld by our Supreme Court in Teixeira, supra. 674 A.2d 407, did not pertain to Armenio's shares. Pursuant to Article V, Paragraph 4 of the corporate bylaws, Armenio is compelled to transfer to the corporation all the shares of the corporation in his name, and upon such transfer shall receive in return his initial capital investment in the corporation, without interest.[5]
 Loan Repayments Versus Capital Contributions
The Teixeiras argue that they are entitled to repayment of both principal and accrued interest on alleged loans made to the corporation in 1981. At the time the business was formed, the Teixeiras contributed $20,000.00 each for 100 shares of stock apiece. The Teixeiras submit that these were loans made in good faith to the corporation with the expectation of repayment. However, these loans were listed as capital contributions on the corporation's 1983 tax return. The Teixeiras claim that they were never notified of this classification of their loans to equity and never consented to said classification, warranting said classification void.
The corporation correctly suggests that the actions of the Teixeiras do not comport with the execution of a loan to the corporation. They failed to exercise any promissory notes that would suggest a debtor-creditor relationship and also collected dividends on their shares. Furthermore, our Supreme Court classified these "loans" as contributions in its 1997 decision:
 "After having each made capital contributions of $20,000, the shareholders each received 100 shares of stock in the corporation."
(Emphasis added.)
Other than our Supreme Court's aforementioned recitation, Rhode Island law offers no statutory guidance to differentiate a shareholder loan from a capital contribution. Tanzi v. Fiberglass Swimming Pools, Inc.,414 A.2d 484, 489 (R.I. 1980). Our Supreme Court has turned to other jurisdictions for guidance on this issue. Id. The Tanzi Court notes that the Supreme Court of Idaho failed to find the requirements of a valid shareholder loan when the shareholders were not listed on the corporate records as creditors, no note was executed, and the shareholders never considered the advanced security as a loan until litigation had already commenced. Id. at 489 (citing Weyerhaeuser Co. v. Clark's Material Supply Co., 90 Idaho 455, 461, 413 P.2d 180, 183 (1966)). This Court finds the circumstances surrounding the Teixeiras' advancement analogous to those of Weyerhauser. The Teixeiras never executed a note, were not listed as creditors in the corporate records, and failed to object to the classification of the security as a capital contribution until the latter stages of this litigation.
The "transaction itself bore very few earmarks of an arm's length bargain," thus warranting its classification as capital contributions. See Id. at 491.
 Corporate Offsets
As a final matter, the corporation suggests that the fair market value of Antonio Teixeira's shares must be offset by the dividends he has already been paid (totaling $24, 000.00). The corporation asserts that Antonio "lost the right to dividends when he elected to be bought out." In the alternative, the Teixeiras maintain that there is no basis for the value of Antonio's shares to be reduced by dividends paid by the company from 1990 through 1999.
Our Supreme Court adopted the rationale of the Delaware Court stating that "a shareholder's fixed contractual right to unpaid dividends is of such dignity that it cannot be diminished or eliminated retrospectively. . . ." Bove v. Community Hotel Corp. of Newport, 249 A.2d 89, 93, (R.I. 1969) (quoting Consolidated Film Industries, Inc. V. Johnson,22 Del. Ch. 407, 197 A. 489 (1937)).
According to Article V (2) (b), of A. Teixeira's corporate bylaws, "[t]he corporation shall be entitled to treat the holder of record of any share as the holder in fact thereof. . . ." In addition, Article VII of the bylaws provides that "[t]he shareholders may from time to time declare, and the corporation may pay, dividends on its outstanding shares in the manner and upon the terms and conditions provided by law."
Through the pendency of this litigation, Antonio Teixeira has been a shareholder of record entitled to corporate dividends. Accordingly, the corporation may not offset or diminish the fair market value of Antonio's shares with the dividends already paid.
In ascertaining the fair market value of Antonio Teixeira's stock, this Court shall seek the services of a special master, pursuant to Rule 53 (a) of Super. R. Civ. P. Such an individual shall be "`versed in the intricacies of corporate finance'" and shall "consider all relevant value factors including market value, book value, asset value, and other intrinsic factors probative of value." Bove v. Community Hotel Corp. of Newport, 105 R.I. 36, 249 A.2d 89, 100 (1969) (quoting Jeffrey v. American Screw Co., 98 R.I. 286, 201 A.2d 146, (1964)).
However, pursuant to Rule 53 (c) of Super. R. Civ. P., the master shall be instructed by this Court as follows: (1) to value Antonio's shares as of May 23, 1990, without the application of a minority discount; (2) to apply the statutory interest rate of twelve percent per annum from May 23, 1990; (3) to consider Armenio Teixeira removed as a shareholder as of November 16, 1990 and only entitled to the return of his initial capital investment in the corporation — without interest; (4) to consider the Teixeiras' 1981 investments to be capital contributions and not loans to the corporation; and (5) to value Antonio's shares without offsetting that amount by the dividends paid to him by the corporation.
Counsel shall submit the appropriate judgment for entry.
[1] In April, 1982, Artur Moto offered to sell his stock to the corporation and was formally rejected. Thereafter, he sold his shares to Joaquim Duarte, who then owned 200 shares while the other shareholders held 100 shares each.
[2] The Court clarifies that unlike Armenio Teixeira, Antonio Teixeira never acquired any interest in the second liquor store and "thus could not in law have been found to have breached his fiduciary duty to plaintiff." Id. at 1388.
[3] G.L. § 9-21-10, "Interest in civil actions" expressly provides: "(a) In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."
[4] See F. Hodge O'Neal, Molding the Corporate Form to Particularize Business Situations: Optional Charter Clauses, 10 Vand. L. Rev. 1, 20-21 (1956).
[5] The parties have been embroiled in litigation for well over sixteen years. During that interim, neither the corporation nor Armenio Teixeira affirmatively discussed the practical and financial ramifications of Armenio's removal as a shareholder. It is elementary that in order to be bought out as a shareholder, one would have to actually be a shareholder at the time of the actual buyout. In its 1994 decision, this Court inadvertently stated the following recitation relating to Antonio rather than Armenio in 1991 rather than 1990:
 "In 1991, Antonio Teixeira, precluded from participating in the corporation following a conviction of a crime unrelated to corporate activity and affairs, was removed as a shareholder."
However, on appeal, neither party argued Armenio's status, and this point was largely overlooked. At present, this Court is merely clarifying and defining the specific entitlement of Armenio Teixeira, which is neither contrary to the Supreme Court orders nor creating a new status for Armenio that was not known by all parties to this controversy at the time of his removal in 1990.