Paul V. ANJOORIAN

v.

Arnold KILBERG et al.

No. 2001–356–Appeal.

Supreme Court of Rhode Island.

Dec. 4, 2003.

Counsel waived oral arguments, for Plaintiff.

Counsel waived oral arguments, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Arnold Kilberg (Kilberg), appeals from a Superior Court judgment wherein the plaintiff's, Paul V. Anjoorian's (Anjoorian), shares of stock in Fairway Capital Corporation (Fairway) were valued at $809,382.85. This case came before the Supreme Court for oral argument on October 8, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Counsel waived oral arguments. Therefore, after examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. We affirm the Superior Court judgment.

Fairway was incorporated to operate a small business investment corporation pursuant to the Small Business Act of 1958, 15 U.S.C. § 631, and is regulated by the Small Business Administration (SBA). Fairway is a lender engaged in the business of making and servicing small business equity loans. Anjoorian is a 50–percent shareholder of Fairway; Kilberg's children, Gary, Jennifer, and Cheryl (collectively, the defendant shareholders), also own the other 50 percent. Kilberg did not own shares in Fairway, but was the corporation's "investment advisor" and was responsible for its day-to-day management. Anjoorian objected to Kilberg's day-to-day management of Fairway. Consequently, in March 1994, Anjoorian filed an action against Kilberg and the defendant shareholders, seeking dissolution of Fairway pursuant to G.L.1956 § 7–1.1–90 and for unspecified damages for mismanagement and breach of fiduciary duties by Kilberg.

The defendant shareholders filed a notice of election to purchase Anjoorian's shares pursuant to § 7–1.1–90.1. In February 1995, a Superior Court justice appointed Girard Visconti (the appraiser) as the appraiser to determine the fair market value of the shares of stock owned by Anjoorian as of the date of the filing of the petition. Kilberg was ordered to give his personal surety bond in the amount of $1.25 million to secure payment thereof. After numerous hearings, the appraiser issued a report determining that the value of Anjoorian's stock was $809,382.85. Thereafter, Anjoorian filed a motion to confirm Visconti's report and Kilberg objected.

The trial justice held numerous hearings, reviewed memoranda submitted to the appraiser, and gave each party the opportunity to file additional memoranda, transcripts of testimony presented to the appraiser, and affidavits.

Although the record on appeal is incomplete, it would appear that the trial justice made a bench decision confirming the appraiser's report and then entered judgment in favor of Anjoorian and against Kilberg and the other shareholders in the amount of $809,382.85, together with interest and costs in the amount of $728,047.19. The transcript of that decision, however, is not part of the record on appeal, nor was any order entered delineating the trial justice's findings.

On March 3, 2000, Kilberg was ordered to post surety for his bond in the amount of $1.25 million, which order was stayed after Fairway was placed into receivership. In October 2000 the stay was vacated, and Kilberg subsequently was found in contempt for failing to post surety. On March 13, 2001, a final judgment was en-

tered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, and Kilberg timely appealed.

Kilberg contends that the trial justice overvalued plaintiff's shares of Fairway. He argues that the trial justice improperly considered evidence that was not available before the date that the petition for dissolution was filed, and thus failed to consider as a liability a penalty that could have been assessed against Fairway by the SBA for prepayment of outstanding debentures that the SBA held on loans to Fairway. Kilberg further alleges that the trial justice erred in failing to offset certain outstanding loans that Fairway made to shareholders against the value of the corporation.

At the outset we raise an issue not argued by either party, and that is the question of Kilberg's standing to appeal the trial court's judgment. The judgment from which Kilberg appeals was entered by the Superior Court pursuant to § 7–1.1–90.1 after a hearing on Anjoorian's motion to confirm the appraiser's report and Kilberg's objection to it. Section 7–1.1–90.1 allows one or more shareholders to avoid a dissolution, whenever another shareholder has filed a petition to dissolve a corporation, by filing an election to purchase the petitioner's shares at a price equal to their fair value.

It is uncontroverted that Kilberg was not a shareholder of Fairway. Although Anjoorian alleged mismanagement and breach of fiduciary duty by Kilberg and sought monetary damages, it does not appear that there ever have been any findings on those claims. The Notice of Election to Purchase Shares was filed by his three shareholder children. An appraiser was appointed and the trial court subsequently determined the fair value of the stock, all in accordance with § 7–1.1–90.1. Only Kilberg's children had the statutory

right, and now obligation, to purchase the shares.

We note, however, that the judgment was entered against Kilberg personally, that he was ordered to post surety in a bond, subsequently adjudged in contempt for failure to do so, and that execution was issued against him in the amount of $1,537,430.04. Undoubtedly, he is the true party in interest. We shall assume, therefore, without deciding, that he has standing to pursue this appeal.

■ A second, more troubling issue is the lack of a complete record. Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure requires an appellant to provide "a transcript of such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record." This Court has "consistently warned that it is fundamental that 'a party seeking to have this Court review alleged error has the burden of furnishing us with so much of the record as may be required to enable this [C]ourt to pass on the error alleged.'" *Kalooski v. Albert–Frankenthal AG*, 770 A.2d 831, 833 (R.I.2001) (per curiam) (quoting *May v. Penn T.V. & Furniture Co.*, 686 A.2d 95, 98 (R.I.1996) and *Chariho Regional High School District v. Town Treasurer of Hopkinton*, 109 R.I. 30, 45, 280 A.2d 312, 320 (1971)).

■ "[T]he failure to comply with this requirement may result in a dismissal of the appeal." *State v. Pineda*, 712 A.2d 858, 861 (R.I.1998). Without a sufficient transcript, this Court "cannot perform a meaningful review and [has] no choice but to uphold the trial justice's findings." *In re Kimberly & James*, 583 A.2d 877, 879 (R.I.1990) (citing *Kelaghan v. Roberts*, 433 A.2d 226, 232 (R.I.1981)).

■ Given the incomplete state of the record on appeal, we are compelled to

uphold the findings of the trial justice. Significantly absent from the record before this Court is the transcript of the trial justice's bench decision itself. Without the benefit of the trial justice's findings, we are unable to determine whether "in valuating the plaintiff's shares, the trial justice considered all the evidence and made a reasonable decision." *Charland v. Country View Golf Club, Inc.*, 626 A.2d 695, 696 (R.I.1993) (per curiam).

■ It is well settled that fact-findings made by a trial justice sitting without a jury are given great weight and "will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Associated Builders & Contractors of Rhode Island, Inc. v. Department of Administration*, 787 A.2d 1179, 1184 (R.I.2002) (quoting *Technology Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997)); *Charland*, 626 A.2d at 696.

This action commenced with Anjoorian's filing of a petition for dissolution under § 7–1.1–90. The defendant shareholders invoked their right under § 7–1.1–90.1 to avoid the dissolution by filing "an election to purchase the shares owned by the petitioner at a price equal to their fair value." Section 7–1.1–90.1 further provides that "the court shall * * * determine the value of the shares, in accordance with the procedure set forth in § 7–1.1–74, as of the close of business on the day on which the petition for dissolution was filed."

Section 7–1.1–74(a) provides, *inter alia*, that "[t]he court may, if it so elects, appoint one or more persons as appraisers to receive evidence and recommend a decision on the question of fair value. The appraisers have the power and authority that is specified in the order of their appointment or an amendment of the order."

■ The finding of an appraiser in valuating shares of stock is to be undisturbed if it is not clearly wrong. *Jeffrey v. American Screw Co.*, 98 R.I. 286, 296, 201 A.2d 146, 152 (1964). "In such circumstances the superior court in reviewing the report [is] without authority to disturb the findings made therein by the appraiser unless it appeared clearly that by overlooking material evidence he did not ascertain the full and fair value of the stock." *Id.* at 297, 201 A.2d at 152.

Likewise, Rule 53(e)(2) of the Superior Court Rules of Civil Procedure directs the Superior Court to accept the findings of fact of a master "unless clearly erroneous" in all actions tried without a jury.

In this case the trial justice held extensive hearings, heard independent testimony from accountants presented by both parties, and invited the submission of affidavits and evidence that had not been available to the appraiser. Although we cannot be sure that he accepted the appraiser's methodology in full, he clearly adopted the appraiser's valuation of Anjoorian's shares without modification.

Kilberg argues that the trial justice improperly considered evidence of activities that transpired after the valuation date. Citing *Jeffrey*, 98 R.I. at 291, 201 A.2d at 149, he contends that such evidence is incompetent and immaterial. According to Kilberg a letter from the SBA dated after the valuation date was admitted into evidence, and defendant's expert witness was allowed to answer the question whether he had found "any evidence that the SBA ever charged any pre-payment penalty ever." Kilberg further contends that as of the valuation date the prepayment penalty clearly was a liability that would have to be disclosed to any potential buyer, thus reducing the value of the shares of stock.

Anjoorian maintains that the SBA sent Fairway a letter in January 1994, two

months before the valuation date, in which it waived any prepayment penalties for the early repayment of debentures. He also contends that Fairway's 1993 financial statement, prepared by Kilberg, did not disclose the prepayment penalty as a contingent liability.

Without a transcript of the trial justice's bench decision, we simply are unable to ascertain upon what evidence he relied.

Kilberg also ascribes error by the trial justice in not considering outstanding loans, including those to Anjoorian, as offsets against the value of the business. Anjoorian contends that there is no evidence of any shareholder's loan to him, and even if there were such a loan, it would be an asset of the corporation rather than an offset.

"A determination of whether the transaction is a bona fide loan, thus affording the shareholder creditor status, or a contribution of capital, representing equity rather than debt, requires an analysis of the facts and circumstances." 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations*, § 5739 at 41 (Perm.Ed., rev.vol.2000). Again we are stymied by the lack of a complete record.

██ "Appraisers are generally given wide discretion to consider all relevant factors in determining the fair market value." *Shade v. Butler*, 706 A.2d 1325, 1326 (R.I. 1998) (mem.). The findings of an appraiser are not to be disturbed unless clearly wrong. *Jeffrey*, 98 R.I. at 296, 201 A.2d at 152.

It is the responsibility of an appellant to provide this Court with so much of the record as will enable us to perform a meaningful review, lest he or she run the risk that the appeal be dismissed. Sup. Ct.R. 10(b)(1); *Kalooski*, 770 A.2d at 833.

The defendant Kilberg has failed to satisfy his responsibility under Rule 10(b)(1). Moreover, we find nothing in the available record to indicate that the trial justice overlooked or misconceived evidence, erroneously relied upon improper evidence, or failed to give due deference to the appraiser's report. The Superior Court judgment is therefore affirmed, and the papers remanded to the Superior Court.

Justices GOLDBERG and FLAHERTY did not participate.