David N. RILEY

v.

William STONE, M.D., et al.

No. 2004–224–Appeal.

Supreme Court of Rhode Island.

June 19, 2006.

---

David E. Maglio, Providence, for Plaintiff.

William F. White, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

The plaintiff, David N. Riley (plaintiff),[1] is before the Supreme Court on ap-

---

1. The plaintiff filed suit individually and in his capacity as the father of David M. Riley, a

peal from a judgment on a jury verdict entered in favor of the defendants, William M. Stone, M.D. (Dr. Stone) and University Physicians Foundation, Inc. (University or collectively defendant), in this medical malpractice action. Specifically, the plaintiff assigns error to: (1) the denial of his motion for a new trial based on what he contended were erroneous jury instructions and (2) the exclusion from evidence of portions of videotaped depositions and doctors' notes of treating and consulting physicians. For the reasons stated herein, we affirm the judgment of the Superior Court.[2]

## Facts and Travel

It is undisputed that on January 24, 1996, plaintiff visited Dr. Stone's office with complaints of weakness in his legs. Doctor Stone, a neurologist, ordered a series of Magnetic Resonance Imaging (MRI) tests, including MRI of plaintiff's brain, to determine whether plaintiff was suffering from a neurological disorder. The tests were performed at the Miriam Hospital. Richard Gold, M.D. (Dr. Gold), a radiologist, prepared the MRI report and noted "evidence of moderate hypertrophy of adenoidal soft tissue * * *. This has been described in viral illness. Clinical correla-

tion is recommended." Doctor Stone testified that in his opinion, the results of the MRI did not indicate any neurological disease. Instead, based on his examination of plaintiff and plaintiff's personal history, Dr. Stone opined that the swelling, associated with plaintiff's adenoids,[3] was benign and indicated a viral illness, such as a cold or sinusitis, which did not require any additional testing.

More than two years later, on September 19, 1998, plaintiff was diagnosed with nasopharyngeal cancer. The cancerous tumor was located in the same general area as the adenoidal swelling that Dr. Gold noted on the 1996 MRI. On February 5, 1999, plaintiff filed a medical malpractice claim in Superior Court against Dr. Stone and University, Dr. Stone's employer.[4] The plaintiff alleged that after receiving the MRI results, Dr. Stone negligently failed to schedule a follow-up neurology appointment and failed to perform the clinical correlation that Dr. Gold recommended. The plaintiff contended that Dr. Stone was negligent when he failed to refer him to an otolaryngologist (ear, nose, and throat physician) for further testing of the adenoidal swelling and that this negligence delayed the diagnosis, resulting in a more extensive treatment regimen because

minor, for damages for loss of parental society and companionship. Article I, Rule 5(a) of the Supreme Court Rules of Appellate Procedure provides that although two or more parties may file a joint notice of appeal, each party is required to pay the prescribed filing fee under Article I, Rule 3(b) of the Supreme Court Rules of Appellate Procedure. This Court has held that "[f]ailure of a party to tender the requisite fee renders its appeal invalid." *Kirby v. Planning Board of Review of Middletown*, 634 A.2d 285, 288 (R.I.1993). Because David M. Riley did not pay a filing fee, he is not an appropriate party before this Court.

2. We note at the outset that plaintiff has failed to provide the Court with the motion *in li-*

mine or the hearing transcript of the trial justice's findings and conclusions that gave rise to the challenged evidentiary rulings. Based on these deficiencies in the record before us, we decline to address those issues.

3. Adenoids are an extension of lymph node tissue in an area of the head behind the nose.

4. The plaintiff's original complaint also named Dr. Richard Gold and the Miriam Hospital as defendants. The plaintiff filed an amended complaint to include William T. Creighton, M.D., and East Side Internists, Inc. as defendants. However, all these defendants were dismissed prior to trial.

of the late cancer diagnosis. The allegations against University were based solely on a theory of vicarious liability.

On April 7, 2003, the case was tried before a jury in the Superior Court. At trial, Dr. Stone described his physical examination of plaintiff and testified about his opinion that the MRI report noting "moderate hypertrophy of adenoidal soft tissue" was insignificant. He contended that he had performed a clinical correlation of the adenoidal hypertrophy when he analyzed the results of plaintiff's examination and his personal medical history. Based on this correlation, Dr. Stone concluded that the hypertrophy was an incidental finding that did not pose a danger to plaintiff.

The plaintiff presented a videotaped deposition of Brian Duff, M.D. (Dr. Duff), who performed the biopsy that confirmed plaintiff's nasopharyngeal cancer. The trial justice excluded certain portions of Dr. Duff's deposition, however, holding that it was expert opinion testimony, but that Dr. Duff had not given an opinion within a reasonable degree of medical certainty.

The plaintiff also submitted the videotaped deposition of Daniel Kim, M.D. (Dr. Kim), an otolaryngologist. The trial justice excluded certain portions of this videotaped deposition based on her finding that the witness failed to give an opinion to a reasonable degree of medical certainty. The trial justice excluded Dr. Kim's opinion that the 1996 brain MRI, more likely than not, indicated a diagnosable tumor and his testimony about procedures that an otolaryngologist would have undertaken because it was not responsive to a question about what Dr. Stone should have done.

Richard Rudders, M.D. (Dr. Rudders), an oncologist, testified as a medical expert for plaintiff. Doctor Rudders testified that Dr. Stone breached the standard of care for physicians in general, regardless of specialty, by failing to refer plaintiff to another specialist for further investigation of the adenoidal swelling. However, the trial justice ruled that Dr. Rudders was not permitted to refer to the notes prepared by Dr. Duff and Ivo Janecka, M.D. (Dr. Janecka),[5] that she ordered redacted. She did, however, allow Dr. Rudders to independently analyze the MRI results and give an opinion, without reference to Dr. Duff's or Dr. Janecka's notes. This Court has not been furnished with the record detailing the rationale for the trial justice's ruling.

The defendant presented a number of expert witnesses who testified that the adenoidal swelling on the 1996 MRI had no connection to nasopharyngeal cancer; that Dr. Stone's treatment was reasonable; and that after examining the MRI in question, Dr. Stone was not required to undertake further testing or treatment.

At the close of evidence, the trial justice instructed the jury that Dr. Stone was "under a duty to use the same degree of skill and care that is commonly possessed by other members of the profession who are engaged *in the same type of practice* * * *." (Emphasis added.) The plaintiff objected to this instruction and requested that the jury be informed that a physician could be held to the standard of care of a physician engaged in a specialty other than his own if the physician assumed the duty of care of that specialty. The trial justice denied this request, finding that the instruction she gave adequately covered the law. The jury returned a verdict in favor of defendant, and the trial justice denied plaintiff's motion for a new trial based on her conclusion that the jury instructions

---

5. Doctor Janecka is a head and neck surgeon who examined plaintiff on October 6, 1998, and reviewed radiology films from 1996 and 1998.

were proper and the challenged evidence appropriately was excluded. The plaintiff appealed.

## Standard of Review

■ In passing on an appeal from the denial of a motion for a new trial based on alleged errors of law, this Court employs *de novo* review to determine whether the trial justice committed legal error. *Votolato v. Merandi*, 747 A.2d 455, 461 (R.I. 2000). A trial justice's decision granting or denying a new trial will not be disturbed unless he or she has overlooked or misconceived material and relevant evidence or otherwise was clearly wrong. *Id.*

■ The admissibility of evidence, expert opinion or otherwise, "rests within the sound discretion of the trial justice and will not be disturbed on appeal absent an abuse of that discretion." *Morra v. Harrop*, 791 A.2d 472, 476 (R.I.2002) (citing *State v. Capalbo*, 433 A.2d 242, 246–47 (R.I.1981); *State v. Benton*, 413 A.2d 104, 113 (R.I.1980)). This Court has stated that expert testimony, "has no special status in the evidentiary framework of a trial[,]" including a medical malpractice case. *Morra*, 791 A.2d at 477. As long as the expert's opinion "is given with the requisite degree of certainty, that is 'some degree of positiveness,' it matters not what words are used to convey that certainty or that the word 'possibility' was uttered." *Id.* (quoting *Sweet v. Hemingway Transport, Inc.*, 114 R.I. 348, 355, 333 A.2d 411, 415 (1975)). Although talismanic incantations have been eschewed by this Court, the expert witness must testify that the opinions offered rise to the level of reasonable medical certainty, that is, some degree of positiveness or probability and not possibility. *Id.* If the expert has testified with the requisite degree of positiveness, "his or her testimony is admissible and issues relative to the weight of the evidence are left to the fact-finder." *Id.* (citing *Sweet*, 114 R.I. at 355, 333 A.2d at 415).

## I

### Jury Instructions—Standard of Care

Before this Court, plaintiff assigns error to the trial justice's instruction concerning the standard of care that Dr. Stone owed to his patient. The plaintiff contends that the trial justice should have instructed the jury that when Dr. Stone, a neurologist, decided to perform the clinical correlation of plaintiff's adenoidal swelling, he assumed the duty of care of an otolaryngologist. According to plaintiff, after Dr. Stone concluded that the adenoidal swelling was insignificant and probably caused by viral illness, he was rendering care as an otolaryngologist and the jury should have evaluated defendant's care and treatment under the standard of care of an otolaryngologist.

■ When formulating jury instructions, a trial justice need not adopt the specific language that the parties proposed, as long as the "trial justice fulfills his or her obligation to charge the jury properly by framing the issues in such a way that the instructions 'reasonably set forth all of the propositions of law that relate to material issues of fact which the evidence tends to support.'" *Morinville v. Old Colony Co–operative Newport National Bank*, 522 A.2d 1218, 1222 (R.I.1987). It is well settled that this Court examines jury instructions "in their entirety to ascertain the manner in which a jury of ordinarily intelligent lay people would have understood them." *Parrella v. Bowling*, 796 A.2d 1091, 1101 (R.I.2002) (quoting *State v. Marini*, 638 A.2d 507, 517 (R.I. 1994)). We do not examine single sentences or selective parts of the charge; rather, "the challenged portions must be

examined in the context in which they were rendered." *Id.*

■ In this case, the trial justice's instruction concerning the applicable standard of care was a proper statement of the law. The trial justice instructed the jury as follows:

"In diagnosing, caring for and treating a patient, however, a physician is under a duty to use the same degree of skill and care that is commonly possessed by other members of the profession who are engaged *in the same type of practice* having due regard for the state of scientific knowledge at the time of treatment." (Emphasis added.)

In *Sheeley v. Memorial Hospital,* 710 A.2d 161 (R.I.1998), this Court held that "a physician is under a duty to use the degree of care and skill that is expected of *a reasonably competent practitioner in the same class to which he or she belongs,* acting in the same or similar circumstances." *Id.* at 167. (Emphasis added.) Here, no evidence was presented at trial suggesting that Dr. Stone undertook the care of plaintiff as an otolaryngologist. Doctor Stone is a neurologist. The evidence in this case established that Dr. Stone, based on his examination of plaintiff and plaintiff's personal history, determined that the adenoidal swelling was insignificant. It was up to the jury to determine whether Dr. Stone was negligent. His skill and knowledge as a board-certified neurologist were relevant factors for the jury to consider in deciding whether his failure to refer plaintiff to a specialist comported with the standard of care. The trial justice correctly instructed the jury that Dr. Stone was under a duty to render the same degree of skill and care that is possessed by other physicians engaged in the same type of practice. In *Parrella,* 796 A.2d at 1100, this Court approved a nearly identical standard of care jury instruction in a medical malpractice case.[6] Accordingly, we are of the opinion that, when examined in light of the evidence in the record, the jury instructions were not erroneous.

## II

### Evidentiary Rulings

■ The plaintiff assigns error to several of the trial justice's evidentiary rulings that excluded from the jury's consideration portions of depositions and medical records. It appears that Dr. Kim's videotaped deposition was redacted in part and that the trial justice ordered redacted portions of Dr. Duff's videotaped deposition and notes in his office records. Additionally, plaintiff alleges the trial justice erred when she precluded Dr. Rudders from referring to notations made by Drs. Duff and Janecka in their respective office records. Because the parties stipulated to the admission of these medical records under Rule 803(6) of the Rhode Island Rules of Evidence—Records of Regularly Conducted Activity—plaintiff argues that the trial justice erred by ordering portions of the records redacted.

■ The plaintiff has not provided this Court with a sufficient record to address some of his appellate contentions or to evaluate the trial justice's reasons for excluding this evidence. It is the responsibility of the appellant to furnish this Court with so much of the record, including the

---

6. In *Parrella v. Bowling,* 796 A.2d 1091, 1100 (R.I.2002), the Court found no discernible error in the following jury instruction: "A doctor is required to exercise the same degree of care and skill as that exercised by practitioners of ordinary competence engaged *in the same practice* at the time the doctor rendered the care involved in this action having due regard, of course, for the state of medical knowledge at the time the care was rendered." (Emphasis added.)

transcript, depositions, (if any) and relevant exhibits introduced during the proceeding as will enable the Court to decide the issues raised on appeal. We consistently have declared that an incomplete record on appeal precludes any meaningful review by this Court. *State v. Pineda,* 712 A.2d 858, 860 (R.I.1998). When, as here, the trial justice's decision on a challenged ruling is missing from the record on appeal, proper appellate review is impossible. "Without a sufficient transcript, this Court 'cannot perform a meaningful review and [has] no choice but to uphold the trial justice's findings.'" *Anjoorian v. Kilberg,* 836 A.2d 1092, 1094 (R.I.2003) (quoting *In re Kimberly & James,* 583 A.2d 877, 879 (R.I.1990)).

## 1. Doctor Kim's Deposition

The plaintiff argues that the trial justice improperly excluded portions of the videotaped depositions of Dr. Kim. The plaintiff claims that Dr. Kim's deposition was offered to establish: (1) the standard of care for an otolaryngologist; and (2) whether the mass diagnosed as cancer in 1998 existed as a diagnosable tumor in the 1996 MRI. The trial justice ordered the redaction of portions of the videotaped deposition on the grounds that it was "not framed as proper opinion testimony" and because Dr. Kim, an otolaryngologist, "cannot give an opinion based on what Dr. Stone should or should not have done in his capacity as a neurologist."

The plaintiff argued that Dr. Kim testified that it was more likely than not that the 1996 MRI showed a diagnosable tumor as opposed to a benign finding and that "although he waffled and certain facts had to be added," Dr. Kim "[made] it over the bar, however slightly, with regard to forming an opinion of more likely that not" that the 1996 MRI showed a diagnosable, cancerous tumor.

The defendant responded that not only did Dr. Kim fail to render an opinion about the standard of care Dr. Stone owed, but he also "conceded, under oath that he was not testifying against Dr. Stone, but simply [gave] his opinions about the general nature of the disease" in this case, nasopharyngeal carcinoma.

The trial justice sided with defendant and concluded that a fair reading of the entire deposition testimony "indicates that the doctor's testimony lacks the requisite degree of certainty."[7] Although she recognized that at times Dr. Kim attempted to testify in terms of more probable than not, she found that there were places in the deposition in which "he says completely the opposite." Because these inconsistencies were not resolved or explained, the trial justice declared, "on balance this Court cannot say that Dr. Kim did express [an] opinion to the requisite degree of medical certainty that * * * would allow admission of this testimony."

It is apparent from our review of the trial transcript that the trial justice ap-

---

**7.** A portion of Dr. Kim's deposition was read to the jury and is included in the record before us:

"**Question:** Okay. Dr. Kim do you have an opinion to a reasonable degree of medical certainty that is more probably than not based upon your education, your training, your experience and your review of the records in this case as to whether the mass with adenoidal hypertrophy shown on the February 15, 1996 brain M.R.I. was more

likely than not a diagnosable tumor versus a benign lesion?

"**Answer:** Asked in that form, I don't have an opinion. I cannot have an opinion.

"**Question:** Why is that?

"**Answer:** Well, because we are only going by M.R.I. findings. Not having seen the patient, not having seen the lesion itself in person *I could not tell you.*" (Emphasis added.)

proached this task with an open mind; that she carefully considered the deposition testimony "having given Dr. Kim the benefit of the doubt;" and that, in the exercise of her sound discretion, she excluded portions of his testimony.

 In any negligence action, including a claim of medical malpractice, the plaintiff must establish a standard of care and prove, by a preponderance of the evidence, that the defendant deviated from that standard of care. *Morales v. Town of Johnston,* 895 A.2d 721, 732 (R.I.2006). "In a medical malpractice case expert testimony is an essential requirement in proving the standard of care applicable to the defendant, 'unless the lack of care is so obvious as to be within the layman's common knowledge.'" *Sheeley,* 710 A.2d at 164 (quoting *Richardson v. Fuchs,* 523 A.2d 445, 448 (R.I.1987)). The competency of a witness to render an opinion in a medical malpractice case, as in any trial, is addressed to the sound discretion of the trial justice and will not be disturbed absent clear error or an abuse of discretion. *Id.* (citing *Richardson,* 523 A.2d at 448).

 In this case, the trial justice had the benefit of Dr. Kim's deposition testimony, concluded that he did not render an opinion with the requisite degree of certainty and ordered that portions of the deposition be redacted. We decline to disturb this holding.

We likewise reject plaintiff's argument that the trial justice committed reversible error in failing to allow Dr. Kim to testify about the standard of care that an otolaryngologist owed. Once the trial justice concluded that the witness failed to render

expert opinion testimony with the requisite degree of positiveness, Dr. Kim no longer was qualified to render expert opinion testimony about the standard of care in this case.

### 2. Doctor Duff's Deposition

In an attempt to link the adenoidal swelling on the 1996 MRI with the MRI performed in 1998, plaintiff offered the videotaped deposition of Dr. Duff, who performed a biopsy that confirmed nasopharyngeal cancer. However, as plaintiff conceded, Dr. Duff declined to give an opinion to a reasonable degree of medical certainty and was never called to testify at trial. The trial justice excluded portions of Dr. Duff's deposition on the ground that it was not proper expert opinion testimony.

On appeal, plaintiff refers to a single question from Dr. Duff's deposition that he alleges should not have been redacted:

**"Question:** Was the mass that was seen on the February 1996 film *in at least part of the same space* that the mass of 1998 was located?

**"Answer:** Yes." (Emphasis added.)

In light of plaintiff's concession that Dr. Duff refused to give an opinion about the 1996 MRI to a reasonable degree of medical certainty, we fail to see the relevance of this question or how its exclusion resulted in prejudicial error. Accordingly, we reject this argument.

### 3. Doctors' Notes

The plaintiff also argues that the trial justice improperly excluded portions of the medical records of Dr. Duff [8] and Dr. Janecka,[9] 'the otolaryngologist to whom Dr.

8. The pertinent portion of Dr. Duff's September 22, 1998 office note reads:

"Review of prior MRI's done in February 1996, reveals a soft tissue nasapharyngeal [sic] mass lesion which would be *quite atyp-*

ical to be adenoid tissue and [sic] what was then a 42 [year old man]."

9. The trial justice struck the first and last sentence of Dr. Janecka's note:

Duff referred plaintiff. The plaintiff contends that this evidence was ordered redacted from medical records notwithstanding a stipulation by the parties that the records constituted "Records of Regularly Conducted Activity" under Rule 803(6). According to plaintiff, this evidence was offered: (1) to link the mass seen on the plaintiff's 1996 MRI with the 1998 MRI; and (2) to establish that adenoidal hypertrophy in a forty-two-year-old male was unusual and warranted follow-up with a specialist. The plaintiff argues that the trial justice erred in ordering these records redacted because the parties had stipulated that the records were business records in accordance with Rule 803(6).[10]

This ruling was the subject of a pretrial motion *in limine*, and the transcript of that hearing is not part of the record before the Court. Although the trial transcript discloses that the trial justice excluded Dr. Duff's note based on her belief that it "violates the opinion rule," we do not have the basis for that ruling or even a reference to what "opinion rule" the trial justice adverted. The trial justice, mindful that Dr. Duff had refused to render an opinion in this case declared:

"The note itself does not indicate even a degree of medical certainty to the

"MR (9–98 and '96) reviewed; there is a nasopharyngeal mass on the '96 MR localized to the nasopharynx. The latest MR revealed an extensive enhancing tumor filling the nasopharynx and extending through the clivus to involve the clival dura; also tumor is seen at the pituitary and both carotids. Further extension is visible into the left Meckel's cave with perineural invasion of V2. Patient was unaware of tumor on '96 films."

10. Rule 803 of the Rhode Island Rules of Evidence in relevant part provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

extent that that could be employed and the statement about it being atypical in a man of forty-two years old cannot be so isolated from the balance of the note which is essentially an attempt to comment upon whether the tumor viewed in 1998 is indeed the same mass visible on the 1996 M.R.I. This issue certainly can be explored through other experts. It is not really relevant to the treatment afforded Mr. Riley in 1998 for Dr. Duff's diagnosis of Mr. Riley's condition as of that 1998 office visit."

The trial justice's rationale in excluding portions of Dr. Janecka's records is as follows:

"[Trial Justice]: Any other requests for redactions?

"* * *

"[Defendant's Counsel]: Oh, already talked about, your Honor, the rule *already made* on Dr. Duff to be redacted and we have copies to put into the chart and then the redaction of Dr. Ivo Janecka's report, page six of his report, just that portion, the first sentence of the last paragraph—the last sentence, leaving in all references to 1998, but removing the reference to the 1996 films. That has been agreed to yesterday?

"(6) *Records of Regularly Conducted Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, another person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

"[Plaintiff's Counsel]: Just put on the record that I agree to it in light of your ruling, your Honor. I mean, I think *I already placed on the record that I objected to removing the reference to Dr. Janecka's conclusion that the tumor existed in 1996 and just rely on rulings as previously stated in the record.*

"[Trial Justice]: Okay, consistent with *the Court's prior rulings*, that requested redactions may be made over the plaintiffs' objection based on the absent requisite opinion testimony regarding those opinions to a reasonable degree of medical certainty." (Emphases added.)

Because there is no record of the trial justice's pretrial ruling *in limine*, we decline to decide this issue. We have not been provided with a copy of the motion *in limine*, the arguments of counsel, or the trial justice's ruling on Dr. Duff's note that also controlled the admissibility of Dr. Janecka's records. We deem the record insufficient for appellate review.[11] A vague reference in the record to a prior ruling of the trial court is of no assistance to plaintiff—we are precluded from passing upon the trial court's rationale for ordering the redaction of records that fall within Rule 803(6). Additionally, we decline to scour the record in an attempt to glean the trial justice's thought process and reasoning.

#### 4. Doctor Rudders' Testimony

The plaintiff presented the testimony of Dr. Rudders, a practicing hematologist oncologist, who is board-certified in hematology, internal medicine and oncology. Doctor Rudders gave expert opinion testimony with respect to the standard of care, causation and damages. The plaintiff assigns

error to the trial justice's ruling prohibiting Dr. Rudders from testifying that he relied upon the redacted medical records in forming his opinion.

Doctor Rudders testified that a physician who orders a particular medical test that results in a finding unrelated to the condition for which the report was requested, "is responsible for dealing with the results of the test." The witness testified that in such a situation, the physician has a duty to pursue the finding "to the point where there is no longer any question" about the abnormality.

Doctor Rudders opined to a reasonable degree of medical certainty that the standard of care that applied to defendant based on the 1996 MRI report was to follow up with the radiologist, examine the film and any other test, and in the case of hypertrophy, refer the patient to a specialist for an examination of the affected area. According to Dr. Rudders, plaintiff should have been referred to "an ENT doctor for an examination of the nasopharynx by endoscopy." Doctor Rudders testified that in his opinion, Dr. Stone's treatment of plaintiff was not in accordance with the applicable standard of care of a physician in similar circumstances and that the standard of care has "nothing to do with one's specialty."

Apparently, the trial justice refused to allow Dr. Rudders to testify that his opinion that the 1996 MRI disclosed a diagnosable cancer was based *in part* on the stricken portions of Dr. Janecka's and Dr. Duff's records and a telephone conversation he had with Dr. Janecka during the trial.[12] Doctor Rudders was permitted to

---

**11.** The dissent disagrees with our conclusion. However, on the state of the record before us, we decline to address whether records of regularly conducted activity, admissible pursuant to Rule 803(6), must be redacted because, in making a notation in a patient record, the

doctor did not express an opinion to a reasonable degree of medical certainty.

**12.** In his brief to this Court plaintiff suggests that this issue was preserved by an offer of proof set forth on "pp. 227–264" of the trial

testify about his own examination of the 1996 MRI without reference to the excluded notes; he concluded that the mass on the 1996 MRI was a diagnosable cancer.

Although the issue of the authority of a trial justice to order the redaction of otherwise admissible business records gives us pause,[13] this issue was not preserved for appellate review. Again, we have not been provided with a sufficient record to evaluate the trial justice's decision in light of the excluded evidence.[14]

Nevertheless, the record discloses that Dr. Rudders testified extensively about the standard of care and gave an expert opinion that Dr. Stone's treatment fell below that measure and that this negligence was the proximate cause of harm to plaintiff. The jury rejected this testimony. We are of the opinion that any error on the part of the trial justice in excluding certain testimony was harmless.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.

Justice FLAHERTY, dissenting in part while concurring in the judgment.

I agree with the majority that the jury instructions were not erroneous and that the trial justice did not commit reversible error when she redacted portions of Dr. Kim's and Dr. Duff's videotaped depositions. However, I most respectfully disagree with the majority's holding that the plaintiff waived his right to appeal certain evidentiary rulings because he failed to provide this Court with a portion of the record. Although it is the opinion of the majority that this failure precludes appellate review, in the trial transcripts that were provided to this Court, the trial justice stated and restated her rationale for each of the disputed evidentiary rulings. I therefore believe that the record that Riley provided is more than satisfactory to enable this Court to address the issues raised on appeal.

## I

### Waiver of Appellate Review

Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure says that it is incumbent on an appellant to provide this Court with "such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record." Our rules of appellate waiver serve an important function—the integrity of the appellate process would be undermined if this Court were to base its decisions on speculation and conjecture instead of relying on the record before us. But we have never required a party to provide us with the entire record of the proceedings below. Rather, a party seeking review by

transcript. The plaintiff did not file an appendix and we are unable to locate this offer of proof.

**13.** The defendant argues that the admissibility of these records is governed by G.L.1956 § 9–19–27, entitled "Evidence of charges for medical and hospital services and for prescriptions and orthopedic appliances—Evidence required from hospital medical records." Because we have not been provided with the record transcript of the decision on defen-

dant's motion *in limine,* we are unable to address this contention.

**14.** We will not search the record to substantiate that which a party alleges. Article I, Rule 17(a)(4) of the Supreme Court Rules of Appellate Procedure places the burden on the appellant to prepare a separate appendix to the brief containing "any other part of the record, including the transcript, to which the party wishes to direct the particular attention of the Court."

this Court must only provide "so much of the record as may be required to enable this [C]ourt to pass on the error alleged." *Anjoorian v. Kilberg,* 836 A.2d 1092, 1094 (R.I.2003) (quoting *Kalooski v. Albert–Frankenthal AG,* 770 A.2d 831, 833 (R.I. 2001)). A party's failure to provide this Court with part of the record "may result in a dismissal of the appeal." *Id.* (quoting *State v. Pineda,* 712 A.2d 858, 861 (R.I. 1998)). However, this rule is not absolute, and the waiver of appellate review always has depended on whether we are able to engage in a meaningful review of the proceedings below. *Compare Pineda,* 712 A.2d at 861 (failure to provide stenographic record of district court proceedings precluded appellate review), *with State v. Udin,* 419 A.2d 251, 263 (R.I.1980) (missing portion of transcript "hampered our inquiry," but the record was nevertheless adequate to assess merits of the appeal).

To support its decision that Riley has waived his right to appeal some of the trial justice's rulings, the majority cites *Anjoorian* and *Pineda.* In both cases, the records provided by the respective parties were so lacking that we were unable to assess the merits of their arguments on appeal. In *Anjoorian,* 836 A.2d at 1095, the appellant failed to provide this Court with a copy of the bench decision from which he appealed, and therefore we were unable to evaluate whether " 'the trial justice considered all the evidence and made a reasonable decision.' " Likewise in *Pineda,* 712 A.2d at 861, the appellant did not furnish this Court with a stenographic record of the proceedings below, and therefore we had "absolutely no way of reviewing the decision of the hearing judge." In my opinion, these cases are inapplicable to this case because the record that Riley furnished to this Court is

more than adequate to assess the arguments he raises on appeal.

According to the majority, the record was insufficient to assess the merits of three of the five evidentiary rulings that Riley challenges on appeal: (1) the redaction of a treatment note written by Dr. Duff; (2) the redaction of a note written by Dr. Janecka; and (3) a ruling that prohibited Dr. Rudders from testifying about some of the sources he relied on to form his expert opinion. Apparently, the majority's expansive application of our appellate rules of waiver flows from Riley's failure to provide us with a record of a motion *in limine* that led to the redaction of Dr. Duff's treatment note. There are, in my opinion, too many hats hung on this peg. Because of this sole omission, the majority holds that Riley waived his right to appeal not only the ruling on the motion *in limine,* but also other tangentially related rulings, even though he provided us with a complete record of these other rulings. As outlined below, the three evidentiary rulings deemed waived by the majority are amply discussed in the transcripts that Riley provided for our review, and his arguments should have been addressed on the merits.

### Doctor Duff's Note

The majority observes that the trial justice stated that her reason for redacting Dr. Duff's note was that it " 'violates the opinion rule.' " The majority then comments that "we do not have a basis for that ruling or even a reference to what 'opinion rule' the trial justice adverted." I most respectfully disagree, however, because the trial justice's reasoning is crystal clear from the record. Indeed, she restated her rationale for redacting the note on *six separate occasions* over the course of the trial.[15]

**15.** Furthermore, both parties' briefs present a

clear picture of the motion *in limine* proceed-

For example, when ruling on the portion of Dr. Duff's videotaped deposition in which he discusses this note, the trial justice stated as follows:

"[t]he note itself does not indicate even a *degree of medical certainty*[.]

" * * *

"[I]t is unclear from the records, as well as [Dr. Duff's] testimony, * * * whether these are opinions that he held to the *requisite degree of medical certainty* at the time of his examination." (Emphases added.)

Later, when Riley's attorney made an offer of proof regarding the testimony of Dr. Rudders, he read the disputed portions of Dr. Duff's note into the record. In the face of the justice's prior ruling on the motion *in limine*, the attorney requested that Dr. Duff's note be admitted in full, arguing to the court:

"I think that these are part of the medical record and should be admitted, because the remainder of the record has, I believe, been agreed to by both Dr. Duff's and Dr. Janecka's records * * *.

" * * * *

"I would ask this Court to reconsider its ruling on Dr. Duff's note, and also allow into evidence the note of Dr. Janecka."

The justice denied this request, as well as the attorney's request that Dr. Rudders be permitted to testify about the disputed portion of the note. In so doing, she stated:

"With regard to Dr. Duff, it is clear from his deposition testimony, as well as the language of the note itself, that he is not expressing an opinion about the nature of the mass lesion that he observes

on the 1996 brain MRI * * *. He's not even expressing that opinion in the note, and he clarifies in his videotaped deposition testimony that he does not hold an opinion to a *reasonable degree of medical certainty* * * *.

" * * * *

"It is not even a conclusion that Dr. Duff reaches in the context of that note, and it is an important issue, obviously, for plaintiffs in the case and must be proved to a *requisite degree of medical certainty* * * *.

" * * * *

"This is a transparent attempt in my view, by the plaintiff, through an expert, to simply try to elevate statements of other physicians, not expressed to a *reasonable degree of medical certainty* * * *. I will continue to exclude any reference to the matter in those treating notes that were not stated to the *requisite degree of medical certainty* * * *." (Emphases added.)

There is no doubt that it would have been prudent for Riley to furnish this Court with a record of the motion *in limine* related to Dr. Duff's note. However, it is very obvious from the highlighted language that the trial justice excluded this evidence because Dr. Duff failed to state his opinion to a requisite degree of medical certainty. I therefore cannot agree with the majority's holding that the record is insufficient and that there is no way to determine what opinion rule the trial justice referred to. In my opinion, the rationale for the trial justice's ruling is clearly stated several times.[16] This Court itself has held that to be admissible, a doctor's conclusions must be stated with

---

ing; there is no dispute that the trial justice excluded this evidence because Dr. Duff's note contained an opinion that was not expressed in terms of a reasonable degree of medical certainty.

**16.** I am aware of no rule that would fault a party for the justice's failure to offer citation to a specific rule to support her ruling.

"reasonable medical certainty," and it has done so without citation to a specific rule. *Morra v. Harrop*, 791 A.2d 472, 477 (R.I. 2002) (quoting *State v. Lima*, 546 A.2d 770, 773 (R.I.1988)).

### Doctor Janecka's Note

Unlike the ruling on Dr. Duff's note, Dr. Janecka's note was not the subject of a pretrial motion, and everything that took place in connection with the justice's redaction of this note appears in the record before us. I therefore have some difficulty accepting the majority's conclusory statement that "the trial justice's ruling on Dr. Duff's note * * * also controlled the admissibility of Dr. Janecka's records." In my opinion, it is not necessary to "scour the record" to determine the trial justice's thought process for redacting this record because the justice's reasoning is explicitly stated several times.

For example, the trial justice ruled that Dr. Rudders could not testify about certain portions of Dr. Janecka's note because the note contained opinions that were "not expressed to a *reasonable degree of medical certainty.*" (Emphasis added.) She further explained that "Dr. Janecka has not been deposed, and there has been no statement given by him subject to cross-examination that he holds such an opinion to a *reasonable degree of medical certainty.*" (Emphasis added.) She therefore ruled that Dr. Rudders could not testify about the objectionable portions of the note.

The subject of Dr. Janecka's note was discussed later when the court was considering what exhibits would be presented to the jury. At that point, counsel for defendants requested the redaction of the offending portion of Dr. Janecka's note. The justice responded as follows:

"Okay, consistent with the Court's *prior rulings,* that requested redactions may be made over the plaintiffs' objection based on the absent requisite opinion testimony regarding those opinions to a *reasonable degree of medical certainty.*" (Emphases added.)

In light of this exchange, the record before us includes defendants' request for redaction of the note, plaintiff's objection to that, and the trial justice's ruling with a clear statement of her reasoning. Even under the most stringent view, this on-the-record exchange complies with our requirements for appellate review.

I therefore respectfully disagree with the majority's holding that this issue was waived and that a "vague reference in the record to a *prior ruling* is of no assistance to the plaintiff." (Emphasis added.) [17] The fact that the trial justice incidentally commented on the consistency of that ruling with prior rulings is immaterial because she said on the record that her reason for redacting the note was because it did not state an opinion "to a reasonable degree of medical certainty." Thus, we need not rely on any prior rulings to ascertain the justice's rationale. Therefore, I believe that the Court should have weighed the merits of Riley's appeal on this evidentiary ruling.

### Doctor Rudders' Testimony

The final issue raised by Riley that fell prey to the majority's waiver decision is his challenge to the trial justice's ruling that Dr. Rudders would not be permitted to testify about the details of the redacted notes and a telephone conversation with Dr. Janecka. Again the majority says that Riley has failed to provide us with us a

---

**17.** The trial justice stated that the ruling was consistent with prior *"rulings"* (*i.e.,* plural, not singular). Therefore, even if one of the prior rulings is not in the record before us, there is at least one other ruling that is on the record.

"sufficient record to evaluate the trial justice's decision."

Specifically, the majority states as follows:

"In his brief to this Court plaintiff suggests that this issue was preserved by an offer of proof set forth on 'pp. 227–264' of the trial transcript. The plaintiff did not file an appendix and we are unable to locate this offer of proof."

I respectfully disagree with this assertion because the plaintiff's offer of proof appears in the record *precisely* on the pages cited.[18] Following this offer of proof, Riley's attorney and opposing counsel presented arguments concerning the admissibility of Dr. Rudders' testimony. The trial justice ruled in favor of defendant and stated in part as follows:

"Let me begin with Rule 703, which reads the experts' opinion may be based on a hypothetical question, facts or data received by an expert at or about the hearing, or facts or data in evidence of a type reasonably and customarily relied upon by experts in the particular field and in forming opinions on the subject."

After further outlining the requirements of Rule 703 of the Rhode Island Rules of Evidence, the trial justice stated:

"In this case, at rock bottom, what plaintiff is seeking to do through expert examination of Dr. Rudders, is pour into his testimony expert opinion testimony of both Dr. Duff and Dr. Janecka that is not expressed in the medical record or otherwise to a reasonable degree of medical certainty; in effect transforming nonexpert opinion testimony into expert opinion testimony. I believe that that is an improper use of the rule."

The justice's reasoning to support this ruling continues for several pages, and she specifically outlines the deficiencies of the proffered testimony. Because Riley took all the steps necessary to preserve this issue for appeal, I believe that the majority should have addressed the merits of his arguments.

## II

### Evidentiary Rulings

Notwithstanding the majority's holding that Riley has waived his right to appeal certain issues, I believe that his arguments about the redaction of Dr. Duff's and Dr. Janecka's records warrant analysis by this Court.[19] The merits of Riley's appeal revolve around his contention that these records should have been admitted without redaction because the parties stipulated before trial that the medical reports were business records. He further maintains that the opinions contained within the doctors' reports and notes were admissible

---

**18.** The majority also faults Riley for not furnishing this offer of proof in a separate appendix. However, sixty pages of documents are appended to his brief, and in my opinion, his citation to the exact pages of the transcript is sufficient.

**19.** Riley also argues that the trial justice erred when she ruled that Dr. Rudders could not testify about the redacted portions of Dr. Duff's and Dr. Janecka's notes, as well as the substance of a conversation he had with Dr. Janecka after the trial began. The majority deemed this issue to be waived, but it notes in dicta that even if this ruling was in error, the

error was harmless in light of the doctor's other testimony. Although I believe this issue was properly preserved for appeal, I agree with the majority that the error, if any, was harmless, and I further note that the sources Dr. Rudders relied on did not satisfy the requirements of Rule 703 of the Rhode Island Rules of Evidence because they were not "legally sufficient." *Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 312, 377 A.2d 237, 240 (1977) ("[A]n expert's opinion must be predicated upon facts legally sufficient to form a basis for his conclusion.").

because they were stated to the requisite degree of certainty.

## The Effect of the Stipulation

Riley argues that the trial justice's exclusion of Dr. Duff's and Dr. Janecka's treatment notes was error because the parties had stipulated that these records were business records. The stipulation at issue said in part as follows:

"As to the medical records * * * it is also agreed that they shall be deemed business records, prepared and maintained in the ordinary course of business, for purposes of trial. *All other objections, as may be interposed at trial, are preserved,* and this does not preclude parties from seeking to admit other records." (Emphasis added.)

It is significant that this stipulation reserved the parties' right to raise "[a]ll other objections" at trial. The stipulation effectively precluded hearsay objections by deeming the doctors' notes to be authentic business records, but it did not affect the parties' right to raise other objections. Apart from the clear language of this stipulation, the parties' conduct also demonstrates that they did not intend this document as a stipulation to admissibility. In fact, Riley's counsel objected himself to the admission of Riley's medical bills based on relevancy grounds, even though the bills were covered by the stipulation.[20] Moreover, the mere fact that the parties agreed that the records satisfied the requirements of Rule 803(6) of the Rhode Island Rules of Evidence has no bearing on whether the records complied with other requirements for admissibility. I am aware of no case that holds that satisfying one rule of evidence precludes the need to comply with other requirements for admissibility. *See Ouellette v. Carde,* 612 A.2d 687, 692 (R.I. 1992) (holding satisfaction of Rule 803(6)

did not circumvent the requirements for admitting medical records that contained opinions). The trial justice did not exclude the records from evidence because they were hearsay, but because they did not comply with the requirements for admitting medical opinions. Therefore, the stipulation had no effect on the propriety of these rulings.

## Redaction of the Doctors' Records

Riley next asserts that the trial justice erred when she redacted portions of Dr. Duff's and Dr. Janecka's notes. He contends that the following excerpt from Dr. Duff's treatment notes should have been admitted:

"Review of prior MRI's done in February 1996, reveals a soft tissue nasapharyngeal [*sic*] mass lesion which would be quite atypical to be adenoid tissue [for] what was then a 42 y.o."

He also asserts that redacted portions of Dr. Janecka's notes were admissible:

"MR (9–98 and '96) reviewed; there is a nasopharyngeal mass on '96 MR localized to the nasopharynx. * * * Patient was unaware of tumor on '96 films."

The trial justice ruled that these statements were inadmissible because they were not opinions made to a reasonable degree of medical certainty. Riley maintains, however, that the doctors' opinions satisfied the requisite level of certainty, despite the fact that neither doctor recited the words, "reasonable degree of medical certainty." Essentially he contends that the trial justice's rulings placed form over substance.

It is well settled that when doctors offer their expert opinions, their opinions must be stated to a reasonable degree of medical certainty. *See, e.g., Morra,* 791 A.2d at

---

**20.** Counsel for defendants did not oppose this objection.

477; *Parrella v. Bowling,* 796 A.2d 1091, 1099 (R.I.2002). In lieu of live testimony, G.L.1956 § 9–19–27 allows for admission of a medical opinion through documentation. This statute, however, "in no way relaxes the minimum requirements for the admission of competent medical testimony." *Parrillo v. F.W. Woolworth Co.,* 518 A.2d 354, 355 (R.I.1986). Moreover, when such evidence is offered to establish that a defendant's acts or omissions caused the plaintiff's injury, "such testimony must speak in terms of 'probabilities' rather than 'possibilities.' " *Id.* (quoting *Sweet v. Hemingway Transport, Inc.,* 114 R.I. 348, 355, 333 A.2d 411, 415 (1975)). Although the admission of medical opinions does not hinge on the recitation of "talismanic" words, the expert's opinion nevertheless must be stated with the requisite level of certainty. *Morra,* 791 A.2d at 477 ("the admissibility of expert testimony does not require the use of 'magic words' or 'precisely constructed talismanic incantations' ") (quoting *Gallucci v. Humbyrd,* 709 A.2d 1059, 1066 (R.I.1998)); *accord Bailey v. Cataldo Ambulance Service, Inc.,* 64 Mass.App.Ct. 228, 832 N.E.2d 12, 17–18 (2005) (admissibility of medical records containing expert opinion does not hinge on the "recitation of 'magic words,' " but the opinion must be stated with "sufficient firmness and clarity").

Riley argues that the doctors' statements met the requisite level of certitude required for admission. Doctor Duff's statement that there was a mass in Riley's 1996 MRI is followed by a statement that "it may be that [the 1996 mass] has progressed in size * * *." The use of the term "may" underscores his uncertainty. Doctor Janecka's statements suffered similar infirmities. His note says that a mass appeared in Riley's 1996 MRI and that Riley was unaware of its presence at that time. Yet there is no indication, to any degree of certainty, whether this mass is the same mass that proved to be cancerous in 1998. Given the equivocal nature of Dr. Duff's and Dr. Janecka's opinions, I would affirm the trial justice's rulings, and therefore I concur in the Court's holding.