Justice ROBINSON,
dissenting.
I respectfully dissent. In my view, Mr. Vogel, by virtue of his own explicit judicial admissions, was statutorily barred from recovering the sum of money at issue in this case.
The following facts are uncontested. And, in my judgment, these facts should be dispositive of this case.
Paragraph 7 of Mr. Vogel’s amended complaint reads in its entirety as follows:
“On or about April 9, 2007, Defendant called Mr. Vogel in order to request that Mr. Vogel lend money to Defendant. At that time, Defendant was on vacation in Las Vegas, Nevada. Defendant said that he (Defendant) had lost a substantial sum of money during his trip, and now needed to borrow money so that he might win back at least part of what he had lost. Defendant indicated he would repay Mr. Vogel after he returned from Las Vegas. On or about that same day (April 9, 2007), Mr. Vogel wired $8,500 to Defendant; Defendant received the money at Bellagio Casino in Las Vegas.” (Emphasis added.)
Mr. Catala raised G.L.1956 § 11-19-17 as an affirmative defense in his answer to the amended complaint. That statute provides, in unequivocal language, that “[a]ll * * * promises * * * for the repayment of money knowingly lent for * * * gaming or betting * * * shall be utterly void.”[6] Section 11-19-17 (emphasis added). Mr. Vogel also filed a motion for summary judgment, which included his sworn affidavit that acknowledged the purpose of the loan to Mr. Catala. Specifically, paragraph 4 of the affidavit states:
“At the time [Mr. Catala] called me to request that I loan money to him, [Mr. Catala] said that he had lost a substantial sum of money during his trip to Las Vegas, and needed to borrow money so that he might win back at least part of what he had lost.” (Emphasis added.)
Mr. Catala then filed his own motion for summary judgment, arguing that § 11 — 19— 17 precluded Mr. Vogel from recovering the $8,500 at issue. In that motion, Mr. Catala directed the trial court’s attention to both paragraph 7 of the amended complaint and paragraph 4 of Mr. Vogel’s affidavit; nevertheless, the trial court denied Mr. Catala’s motion for summary judgment. The case then proceeded to trial, at the conclusion of which the trial justice found that there was “no credible evidence to support a finding that there were any promises given or made for the repayment of money knowingly lent for gambling or betting in violation of § 11-19-17.”
The doctrine of “judicial admissions” has long been recognized in our case law. This Court has clearly stated that “parties to an action are judicially bound by their pleadings therein and * * * the allegations are conclusive as against the pleader.” Ogden v. Rabinowitz, 86 R.I. 294, 300, 134 A.2d 416, 419 (1957) (emphasis added). The opinion in the Ogden case further states:
“This rule applies to all pleadings in the case, whether a declaration, complaint or petition, bill of particulars, plea or answer, or other pleading. A party cannot take a position contradictory of, or in *524 consistent with, his pleadings because the facts which are admitted by the pleadings are to be taken as true against the pleader for the purpose of the action, whether or not they are offered as evidence.” Id.
See also Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, — U.S. -, 133 S.Ct. 1184, 1197 n. 6, 185 L.Ed.2d 308 (2013) (citing with approval American Title Insurance Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir.1988) (“Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.”)); State v. Piedmont Funding Corp., 119 R.I. 695, 699, 382 A.2d 819, 822 (1978) (“It is the rule in this state that facts admitted in the pleadings are held as true against the pleader.”); 61A Am.Jur.2d Pleading § 352 (2010) (“An admission in the pleadings is conclusive on the pleader, even if the plaintiff later disputes the allegation.”); Black’s Law Dictionary 54 (9th ed.2009) (noting that a judicial admission “relieves an opposing party from having to prove the admitted fact and bars the party who made the admission from disputing it”).
The majority has declined to reach the merits of this case due to the fact that “we have not been provided with a complete transcript of the trial.” The majority then states that it is “unable to properly engage in a review of the trial justice’s factual findings.”
As an initial matter, I agree with the majority that this Court “ordinarily will not decide matters presented to us unless there has * * * been transmitted to us so much of the record of the tribunal below as may be necessary to enable us to pass on the question at issue * * See Savoy Realty Corp. v. LPL, Inc., 121 R.I. 962, 962, 401 A.2d 61, 61 (1979) (mem.). To that end, it is the appellant’s responsibility to order “a transcript of such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record.” Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure (emphasis added); see also Anjoori-an v. Kilberg, 836 A.2d 1092, 1096 (R.I. 2003).
What the majority overlooks, however, is that, given Mr. Vogel’s judicial admission, we have everything that we need to perform a “meaningful review” of the trial court’s decision to deny Mr. Catala’s motion for summary judgment. See Anjoori-an, 836 A.2d at 1096 (“It is the responsibility of an appellant to provide this Court with so much of the record as will enable us to perform a meaningful review, lest he or she run the risk that the appeal be dismissed.” (emphasis added)). The record before us contains (inter alia) Mr. Vogel’s amended complaint and Mr. Cata-la’s motion for summary judgment.
Mr. Vogel’s admission is dispositive of this case — a case that never should have gone to trial. In his amended complaint, Mr. Vogel explicitly indicated the purpose of the loan at issue; that pleading states that Mr. Vogel lent the disputed sum to Mr. Catala “so that he might win back at least part of what he had lost.” (Emphasis added.)
The “fit” between the plaintiffs two explicit statements as to the purpose of the loan and what § 11-19-17 addresses could hardly be more perfect. Section 11-19-17 reads:
“All bonds, notes, judgments, mortgages, deeds or other securities, as well as promises, given or made for money, lands, houses, or other property, or article or piece of property, real, personal, or mixed, won at any game, or by betting at any race or fight, or for the repayment of money knowingly lent for *525 such gaming or betting, shall be utterly void.” (Emphasis added.)
By its plain terms, the statute renders “utterly void” any loan where the lender knew that the borrower would use the loan to gamble. And that is precisely what Mr. Vogel admitted in his amended complaint and in his sworn affidavit: in both of those documents filed with the court, he stated that he knew (1) that Mr. Catala was in Las Vegas, (2) that Mr. Catala “had lost a substantial sum of money during his trip,” and (3) that Mr. Catala wanted the loan “so that he might win back at least part of what he had lost.”[7]
Mr. Catala expressly cited the statute as an affirmative defense in his answer to the amended complaint, and he thereafter brought his statutory defense and Mr. Vo-gel’s judicial admission (and affidavit) to the court’s attention when he moved (unsuccessfully) for summary judgment. At the time Mr. Vogel filed his amended complaint, Mr. Vogel’s knowledge of the purpose of the loan was “conclusively established.” See State v. Rice, 986 A.2d 247, 249 (R.I.2010) (internal quotation marks omitted). In other words, Mr. Vogel was “preclude[d] * * * from challenging [the judicially admitted fact] later during the lawsuit * * See DiLuglio v. Providence Auto Body, Inc., 755 A.2d 757, 767 (R.I.2000). In spite of Mr. Vogel’s written judicial admission, the trial court denied Mr. Catala’s motion for summary judgment, proceeded to conduct a trial, and ultimately rendered a verdict that belied the statements made in Mr. Vogel’s amended complaint and affidavit.
This case should have been decided by the granting of summary judgment in Mr. Catala’s favor. What transpired after the denial of Mr. Catala’s motion for summary judgment was entirely unnecessary. The trial justice never should have heard testimony or made credibility determinations. The transcript is superfluous to this appeal because, no matter what evidence was presented, the judicial admission in the amended complaint was conclusively established as against Mr. Vogel. See Rice, 986 A.2d at 249.
The majority states that, “[without the transcript, [they] can only speculate as to the testimony adduced at trial”; therefore, they “decline[ ] to accept such an invitation to gamble in that regard.” Our law on judicial admissions, however, makes it clear that, in this ease, there is no gamble: “A party cannot take a position contradictory of, or inconsistent with, his pleadings * * See Ogden, 86 R.I. at 300, 134 A.2d *526 at 419. Whether Mr. Vogel lent the money “knowingly” for the purpose of betting is surely a question of fact, but Mr. Vogel answered that factual inquiry “conclusively” when he filed his amended complaint. See Rice, 986 A.2d at 249. The trial justice’s findings, however, contradict a fact that had already been “conclusively established.” See id. Mr. Vogel could very well have called one hundred witnesses to testify that he lent Mr. Catala the money without knowing that he would use it to gamble, but all of such testimony would have been to no avail in view of Mr. Vogel’s unambiguous judicial admission. See 29A Am.Jur.2d Evidence § 783 (2008) (“The party who made a judicial admission may not controvert the admission on trial or on appeal, and may not create a question of fact for purposes of a summary judgment motion by trying to contradict a previous judicial admission.”). While I have great respect for my colleagues in the majority, it is unclear to me why they have not addressed the conclusive nature of Mr. Vogel’s judicial admission — a concept which we have characterized as “among the most solemn and probative evidentiary offerings known to the law.” See Carter v. Munson, 452 A.2d 309, 310 (R.I.1982).
In my judgment, Mr. Catala was entitled to summary judgment based upon the doctrine of judicial admissions — a venerable and fundamental principle of our jurisprudence.
For these reasons, I respectfully dissent.

. The legislative ancestor of G.L.1956 § 11-19-17 is the Statute of Queen Anne (9 Anne, ch. 14, § 1), which was enacted in England in 1710. See 71 AmJur.3d Proof of Facts 193 § 2 (2003).

. It appears that the trial justice may have misunderstood the effect of § 11-19-17. In his decision, he included the following finding of fact:
"Previously, Vogel did advance money to facilitate Catala's entry into tournament poker games. On those occasions, it was agreed that the advance for entry fees would not be repaid by Catala unless Catala won money in the poker tournament. The Court does not find that the $8500 advance to Catala was in furtherance of the above poker arrangements; instead, the $8500 was a loan made by Vogel to Catala, and for which Catala was obligated to repay regardless of how he used the money.”
This finding by the trial justice suggests that he believed that § 11-19-17 would apply only if Mr. Vogel’s repayment was conditioned on Mr. Catala winning money at the tables. The statute, however, is broader than that; it applies if money is “knowingly lent for * * * gaming or betting.” In other words, since Mr. Vogel knew that Mr. Catala would be gambling with the $8,500, Mr. Catala was statutorily absolved of any legal obligation to pay Mr. Vogel back. This may be a severe result, but it is the result expressly mandated by the General Assembly in § 11-19-17. The statute applies whether or not the lender has a stake in the outcome; so long as the lender offers money that he or she knows will be used to gamble, there is no legally enforceable promise for repayment.